**STANSPEC CORPORATION, Appellee, Cross-Appellant,**

v.

**JELCO, INCORPORATED et al., Appellants, Cross-Appellees.**

**Nos. 71–1639, 71–1640.**

United States Court of Appeals, Tenth Circuit.

Aug. 7, 1972.

Rehearing Denied Sept. 8, 1972.

Dale E. Anderson, Salt Lake City, Utah, for appellants.

D. Craig Lewis, of Pendleton, Sabian, Guthery & Lewis, P. C., Denver, Colo., for appellee.

Before HILL and SETH, Circuit Judges, and BRATTON, District Judge.

SETH, Circuit Judge.

Stanspec Corporation brought this action against Jelco, Incorporated, and its sureties to recover the unpaid balance of the purchase price under an equipment supply contract. Jelco admitted the existence of an unpaid balance, but raised in defense and counterclaim Stanspec's non-performance of an earlier contract for essentially identical machinery. Judgment was entered in favor of Stanspec for the amount in dispute plus six per cent interest. The defendants filed notice of appeal and Stanspec filed notice of cross-appeal.

Jelco was a bidder on the mechanical and electrical work on the Straight Creek Tunnel Project in Colorado, and was ultimately awarded a contract. In preparing its bid Jelco requested bids from suppliers of bulkhead hoists. One of the suppliers contacted was Plant Equipment Company of Denver, who in turn obtained a written proposal for the manufacture and delivery of the hoists from plaintiff Stanspec. A representative of Plant Equipment obtained the plans and specifications for the hoists

from the Colorado State Department of Highways and provided them to Stanspec for its use in preparing the proposal. For reasons undisclosed by the record, however, the specifications did not include certain amendments and revisions then in existence, in particular a drawing showing the type of electrical switch to be used in the hoists. On September 20, 1967, the specification change in question had been mailed to Jelco as it was listed with the State Highway Department as a plan-holder and was on the mailing list for revisions and addenda. Stanspec and Plant Equipment Company were not.

For reasons unrelated to this suit, Stanspec's original proposal to supply the hoists at $1,479.00 each was superseded by a second agreement consummated on May 24, 1968. Still acting in the capacity of a supplier, Plant Equipment Company then contacted Mr. Farley, the Jelco representative in charge of Stanspec's proposal, and requested a current set of specifications. Mr. Farley supplied a set of specifications identical to those which Plant Equipment Company had originally obtained from the State Highway Department, and on the basis of these specifications Plant Equipment submitted the second proposal for Stanspec on May 10, 1968, which was accepted. Stanspec then submitted its final drawings and plans to the project engineers for approval, and upon their rejection it became apparent that both proposals had been prepared on the basis of incomplete specifications.

Stanspec submitted a new proposal to Jelco designed to meet the additional requirements at a new price, but Jelco rejected the proposal, contending that it was Stanspec's responsibility to provide equipment conforming to all existing specifications at the original price. After continued discussions, Stanspec received another purchase order from Jelco, this time offering a higher price for the hoists under the revised descriptions, but containing a provision specifically reserving Jelco's rights under the May 1968 contract. Stanspec returned this order to Jelco rejecting the new order and noting its willingness to provide revised equipment at a higher price without any "special conditions, exhibits, appendixes, or etc. . . . ."

Jelco's attempts to locate another supplier were to no avail, and it agreed to purchase the hoists according to the terms outlined in Stanspec's letter of September 26th. After further price negotiations an agreement to supply hoists at $1,839.25 each was consummated and Stanspec performed. Jelco withheld a portion of the final payment, a portion essentially equivalent to the price difference between the May 10, 1968, and November 10, 1969, contracts.

At trial Stanspec contended that the November 10, 1969, agreement was the only effective contract, and maintained that it would not have entered into this November contract had it been aware of Jelco's intention to reserve its rights under the earlier contract. In this regard it urges that Jelco fully appreciated Stanspec's position at the time. Jelco, on the other hand, maintains that the November 10th agreement was not the solution to the dispute, but on the contrary, maintains that it entered the contract with Stanspec only to facilitate prompt and equitable mitigation of its damages under the initial contract. Jelco further urges that Stanspec was expressly bound under the original contract to furnish equipment in conformity with existing specifications.

The trial court found that the November 10th contract represented an agreed compromise of the dispute, and was binding on the parties. Thus no rights remained under the first contract. The court further found as a matter of law that an out-of-state supplier of equipment and materials has no duty to inquire into changes in or addenda to the specifications furnished by a bidding subcontractor.

■ An agreement which compromises a bona fide dispute as to the duties under an existing contract is of course enforceable and binding if the

dispute as to those duties and obligations is not founded on bad faith. Pittsburgh Testing Laboratory v. Farnsworth & Chambers Co., 251 F.2d 77 (10th Cir.). The law actively encourages compromise and settlement of disputes. Tulsa City Lines v. Mains, 107 F.2d 377 (10th Cir.).

■ A damaged party entitled to the benefit of a contract is under a duty to mitigate his damages, and generally speaking his rights are not diminished if the circumstances force him to deal with the party in default. Warren v. Stoddart, 105 U.S. 224, 26 L.Ed. 1117; see also Annot. 46 A.L.R. 1192; 22 Am. Jur.2d, Damages § 35. However, Jelco maintains that because it had no real choice in this regard, and because of its obligation to mitigate damages, its acceptance of the terms of the second contract cannot be construed as a waiver of its rights under the earlier contract.

■ A non-defaulting party need not accept a modified contract in mitigation of its damages when the modified offer includes abandonment of any right of action for a prior breach as a condition of acceptance. Campfield v. Sauer, 189 F. 576 (6th Cir.); compare Farmers' Co-Op. Ass'n v. Shaw, 171 Okl. 358, 42 P.2d 887, and Annot. 72 A.L.R. 1050. The ultimate purchase of the hoists from Stanspec appears to have been made not so much in mitigation of damages but because this was the only source within the time limitations. If it is a fact that the November 10th agreement was conditioned upon Jelco's non-reservation of rights under the May 10th agreement, it is apparent that Jelco could not have entered into the second contract without relinquishing its rights under the first. Despite the fact that Jelco was faced with a choice, it did not entitle it to avoid the effect of the second contract as it now urges. United States v. Brookridge Farm, 111 F.2d 461 (10th Cir.). The abandonment

of rights under a contract by executing a later substituted contract is not prevented by protesting that rights still exist under the former. United States ex rel. International Contracting Co. v. Lamont, 155 U.S. 303, 15 S.Ct. 97, 39 L.Ed. 160. It is clear from the record that Jelco was aware of Stanspec's insistence that rights could not be preserved under the earlier agreement, and because the November contract was so conditioned, Jelco no longer has the rights it claims. It makes no difference that Jelco never expressly agreed to waive its rights, and silently may have sought to reserve them.

■ In its cross-appeal Stanspec contends that it is entitled to interest on the unpaid contract price at the rate of one per cent per month rather than the statutory rate of six per cent awarded by the trial court. The evidence shows that in response to Jelco's purchase order dated October 30, 1969, Stanspec sent Jelco a formal acknowledgment which contained a notation that a one per cent per month finance charge would be added to accounts over thirty days past due. The evidence also shows that a representative of Jelco had reviewed the acknowledgment, was aware of the notation, and made no objection thereto. On appeal Stanspec pursues this argument for the first time, and under these circumstances the issue is not properly before this court. Eureka-Carlisle Co. v. Rottman, 398 F. 2d 1015 (10th Cir.). In the absence of very unusual circumstances, issues raised in the pleadings but not pressed at trial will not serve as a basis for review. Bartlett-Collins Co. v. Surinam Navigation Co., 381 F.2d 546 (10th Cir.).

The finding of the trial court relative to the enforceability of the November agreement is supported by the record, and we find no error as to interest allowed.

Affirmed.