**WESTEC CONSTRUCTION MANAGEMENT COMPANY, Plaintiff and Counterclaim Defendant–Appellee and Cross–Appellant,**

v.

**POSTLE ENTERPRISES I, INC., Defendant and Counterclaim Plaintiff–Appellant and Cross–Appellee.**

Nos. 01CA1055, 01CA1632.

Colorado Court of Appeals,
Div. IV.

Nov. 7, 2002.

Rehearing Denied Dec. 12, 2002.

Certiorari Denied April 21, 2003.

York & Gregory, P.C., Glenn W. Gregory, Denver, Colorado, for Plaintiff and Counterclaim Defendant–Appellee and Cross–Appellant.

Berg Hill Greenleaf & Ruscitti, LLP, Kathleen M. Morgan, George V. Berg, Jr., Heidi C. Potter, Boulder, Colorado, for Defendant and Counterclaim Plaintiff–Appellant and Cross–Appellee.

Opinion by Judge DAVIDSON.

In this breach of contract action, defendant, Postle Enterprises I, Inc., appeals from the trial court's judgment on remand determining that it failed to mitigate its damages against plaintiff, Westec Construction Management Company. Westec separately appeals the trial court's awards of postjudgment interest, attorney fees, and costs to Postle, and Postle cross-appeals the calculation of per diem interest. The two appeals have been consolidated. We affirm in part, reverse in part, and remand.

In 1995, Westec contracted to build a fast-food restaurant for Postle. Although Postle was responsible for the cost of marking the property boundaries under the contract, Westec hired a surveyor to set the property pins. After the foundation was built, Westec discovered that it was in the wrong location and encroached on neighboring property, and Westec stopped construction. Westec disclaimed any liability for the mistake, but the surveyor acknowledged its error.

With minimal involvement from Westec, Postle and the surveyor began discussing possible remedies. Within a few days, the surveyor obtained an estimate from Westec and agreed to pay the cost of demolishing and relocating the foundation, with any consequential damages to be negotiated later. Postle rejected the offer, indicating that it would settle only the entire controversy, including its claims for lost profits, staffing costs, and other damages caused by the delay in completion. The parties also discussed the possibility of acquiring part of the neighboring property, which Postle viewed as the more expedient option.

After the surveyor requested an estimate, Westec sent Postle a change order that increased the contract sum by over $60,000 and the contract time by forty-six days, and Westec indicated that it could commence work on the project the following week if given notice to proceed. Postle did not sign the change order or give Westec notice to proceed, but continued to negotiate with the surveyor.

The following month, Postle's lender notified it that a continued construction stoppage would constitute a default and indicated that if Postle did not reach an agreement with the surveyor and move forward with the demolition and reconstruction, the lender would accelerate the balance of the loan. Postle did not respond, and the property was ultimately foreclosed upon.

Subsequently, Westec redeemed the property, and the surveyor purchased part of the neighboring lot and suggested that Postle allow construction to commence in the present location and negotiate consequential damages later. Postle rejected the offer, but eventually, after this lawsuit was filed, Westec conveyed the property to Postle, and construction was recommenced. The restaurant was completed approximately twenty-seven months after the date called for in the contract.

Westec sued Postle for payment under the contract, and Postle counterclaimed for breach of contract. Westec's claims for payment were settled before trial. After a bench trial, the court entered judgment for Postle in the amount of $168,371, which primarily represented damages for relocation of the foundation, staffing costs, and lost profits. However, the court refused to award any additional damages to Postle for the twenty-seven-month delay because Postle failed to give notice to Westec as provided in a provision of the contract.

Postle appealed, and another division of this court determined that the failure to give notice was not a proper basis to limit those damages. The division remanded the case for a determination of whether Postle otherwise failed to mitigate those damages and for an award of prejudgment interest. *Westec Constr. Mgmt. Co. v. Postle Ents. I, Inc.,* (Colo.App. No. 98CA1997, Jan. 27, 2000)(not published pursuant to C.A.R. 35(f))(*Westec I*).

On remand, the trial court again found that Postle had failed to mitigate its damages and, accordingly, awarded no additional damages. The trial court awarded prejudgment

interest and subsequently awarded certain postjudgment costs and attorney fees, as well as postjudgment interest on the prejudgment interest from the date of the original judgment.

Postle appeals from the trial court's determination that it failed to mitigate its damages and the calculation of the per diem amount of postjudgment interest. Westec appeals the award of postjudgment interest on the prejudgment interest and the amount of attorney fees and costs awarded. We reverse those parts of the judgment awarding postjudgment interest prior to the date of the judgment on remand and calculating the per diem amount, and otherwise we affirm.

## I.

Postle contends that because allowing demolition and reconstruction of the foundation would have required it to sign Westec's change order, the trial court erred in concluding that Postle failed to mitigate its damages. Postle argues that signing the change order would have required it to abandon a right of action against Westec and, therefore, was not a reasonable mitigation alternative as a matter of law. We disagree.

█ A party seeking recovery under a contract has a duty to mitigate its damages. *La Casa Nino, Inc. v. Plaza Esteban,* 762 P.2d 669 (Colo.1988). "The defense of failure to mitigate damages applies when a plaintiff has failed to exercise reasonable care and diligence to minimize or lessen damages occasioned by defendant's conduct." *Berger v. Sec. Pac. Info. Sys., Inc.,* 795 P.2d 1380, 1385 (Colo.App.1990).

█ "A plaintiff's failure to mitigate damages is excused, however, if mitigation would require inordinate or unreasonable measures or if there were reasonable grounds for the failure to mitigate." *Fair v. Red Lion Inn,* 943 P.2d 431, 437 (Colo.1997). For example, a party "need not accept a modified contract in mitigation of its damages when the modified offer includes abandonment of any right of action for a prior breach as a condition of acceptance." *Stanspec Corp. v. Jelco, Inc.,* 464 F.2d 1184, 1187 (10th Cir.1972).

█ Ultimately, whether a party made reasonable efforts to mitigate its damages is a determination of fact, which will not be disturbed on appeal unless it is clearly erroneous. *See Fair v. Red Lion Inn, supra.*

█ In determining that Postle failed to mitigate its damages, the trial court noted that Postle:

declined to authorize the work to correct the placement of the footings and foundation, declined to accept the offer by [surveyor] to pay for the necessary demolition and reconstruction, declined to accept [surveyor's] offer to preserve the issue of all consequential damages and began negotiations with [surveyor] to purchase the additional lot and demanded resolution of all consequential damages prior to commencing the correction of the construction problem. This continued through April of 1996. At that point in time, Postle was estimating its consequential damages in the amount of $385,000 to $485,000. The Court further finds that Postle's estimates at that juncture were based upon estimates only and were not based upon fact nor could they have been until after a determination had been made concerning actual consequential damages or losses sustained as a result of the delays.... The Court finds that Postle delayed the matter to achieve its goal of receiving the conveyance of the lot that the foundation encroached upon.

These findings are supported by the record and are not clearly erroneous. Postle's evidence indicates that its primary concern with the change order was that it believed it should not have to pay for relocating the foundation and could not afford to do so. Although Postle also provided testimony that it objected to extending the contract, Postle did not give Westec any other form of notice to proceed, nor did it negotiate or object to the form of the change order. It also failed to indicate to the surveyor that the change order was the reason for its refusal to give Westec notice to proceed, and it failed to provide requested documentation to the surveyor for its claimed expenses. Westec introduced testimony indicating that it would have begun construction if Postle had orally

agreed to accept and use the surveyor's funds to pay Westec for the relocation, that it was concerned only with payment, not with attempting to obtain a waiver from Postle, and that Postle never expressed any concerns about waiving its rights under the contract. Additional testimony indicated that Postle wanted to wait to get the land from the surveyor rather than immediately correct the location of the foundation.

Postle attempts to frame the issue, however, as a question of law, contending that the trial court erroneously rejected the proposition that a party need not accept, as mitigation, a modification offer that is conditioned on the abandonment of a right of action. Postle points to the following language in the court's order:

> Throughout the trial, Postle complained that [it] could not accept the offer of [surveyor] to resolve the misplaced foundation issue without a resolution of all the issues because of the potential of waiver of consequential damages. Postle's assertion is an incorrect statement of the law. A damaged party entitled to the benefit of a contract, as Postle was here with Westec, is under a duty to mitigate damages and generally its contract rights are not diminished if circumstances force Postle to deal with the party in default, namely Westec and/or [surveyor]. *Stanspec Corp. v. Jelco, [supra ].*

However, we read the order as recognizing that, while a nondefaulting party is not required to accept a modified contract in mitigation of its damages when the offer is conditioned on abandoning a right of action for breach of the original contract, such was not the case here. Reading the ruling in context, we conclude that the trial court applied the correct legal standard, but determined, as a factual matter, that Postle's refusal to authorize the relocation of the foundation without making any effort to do so under terms it considered to be satisfactory was, under the circumstances, unreasonable.

Postle nevertheless argues that, as a matter of law, it had no duty to make such efforts because Westec's request that Postle sign a change order, by definition, required Postle to release its claims. Postle relies on

several cases in which the offer was found to be an attempt to settle rather than an attempt to mitigate and was clearly conditioned on a waiver of rights. *See Stanspec Corp. v. Jelco, Inc., supra,* 464 F.2d at 1187 ("It is clear from the record that Jelco was aware of Stanspec's insistence that rights could not be preserved under the earlier agreement, and because the [later] contract was so conditioned, Jelco no longer has the rights it claims."); *Gunn Infiniti, Inc. v. O'Byrne,* 996 S.W.2d 854, 860 (Tex.1999)(testimony confirmed that all of seller's offers were attempts to "settle" and, therefore, "implicitly if not explicitly required [buyer] to release his claims"); *Hanna v. Lott,* 888 S.W.2d 132 (Tex.App.1994); *see also Apex Mining Co. v. Chicago Copper & Chem. Co.,* 340 F.2d 985, 988 (8th Cir.1965)("The correspondence between the parties reveals that ore was not purchased from appellant because appellant would not waive appellee's right to claim damages for appellant's previous breach of contract.").

Postle is correct that if the proposed change order were an offer to terminate the entire controversy conditioned on a waiver of Postle's rights, then as a matter of law, Postle necessarily would have released its claims if it accepted the offer. However, whether the change order was offered to terminate the controversy or to mitigate damages was an issue of fact. The trial court did not find that the requested change order was a settlement offer, and Postle does not point to any evidence to that effect. Indeed, nothing in the record demonstrates that construction could not commence unless Postle signed the particular change order presented without a reservation of rights. All of Postle's negotiations were with the surveyor, rather than Westec, and, until Westec initiated suit for payment, Postle made no demands against Westec.

In particular, correspondence indicates that Westec was seeking instructions rather than settlement from Postle and that Postle's lender and the surveyor viewed the change order as an effort to mitigate. For instance, Westec's letter accompanying the change order stated:

To demolish the work that has been done and rebuild in the proper location would cause a forty-six (46) day delay in the original scheduled turnover date. Our completion date would be May 3, 1996 instead of March 18, 1996. Presently Westec could begin work on February 12, 1996 if given notice to proceed immediately.

A letter from Westec to Postle the day before also stated:

In summary, it was discovered in the afternoon of February 5, 1996 that the developer's surveyor ... set the property corners in the wrong location.... As a result all of the work completed at this point in time is in the wrong place. Westec proceeded to contact [Postle, surveyor,] and the land owner. Currently work has stopped and Westec Construction is waiting for direction from [Postle].

A letter from the surveyor to Postle also indicates that the surveyor viewed the situation as mitigation rather than settlement:

We understand that Westec is prepared to start work on Monday (February 12) to relocate the foundation at a price of $60,657.88, shown in Change Order No.1. As we indicated in our last letter, we recommend that Westec be directed to start that work. [Surveyor] is prepared to pay $60,657.88 for that work and leave consequential costs to be negotiated. We don't believe it is helpful to anyone but the lawyers to delay the reconstruction process while you discuss the question of delay costs with this firm or negotiate to acquire more property from [the neighboring owner]. Costs can only increase when you withhold the notice to proceed to Westec. The responsibility for those delays will be yours.

Similarly, a letter to Postle from the attorney representing Postle's lender indicates that the lender did not view continued construction as settlement of any claims:

It is my client's understanding that [surveyor] acknowledged responsibility for the incorrect location of the foundation on February 7, 1996, and that they have continuously recommended that you proceed with the demolition and reconstruction of the foundation at their expense without

waiving your right to subsequently pursue a claim for consequential damages, but you have failed and refused to do so.

In turn, Postle did not indicate to its lender, Westec, or the surveyor that it viewed the change order as a settlement of claims against Westec.

Accordingly, the trial court properly did not consider the change order as an offer of settlement requiring Postle to release its claims.

## II.

In its appeal, Westec contends that the trial court lacked authority to award postjudgment interest on the prejudgment interest awarded on remand. Westec also contends that the award of postjudgment attorney fees and costs was improper because Postle's request was not timely and that the attorney fees award should not have exceeded the amount of the judgment. We agree with the first, but disagree with the latter contentions.

The original judgment was entered on August 27, 1998. In its judgment on remand, dated April 27, 2001, the trial court refused to award additional damages and reaffirmed its original judgment. The court granted prejudgment interest on the original judgment. Later, on Postle's motion, the trial court granted postjudgment interest on the prejudgment interest and on the amount of the reaffirmed original judgment, both calculated from the date of the original judgment, August 27, 1998. The court also awarded attorney fees and costs.

## A.

Westec contends that, after the trial court was directed to award prejudgment interest on remand, it was without authority to enter an award of postjudgment interest on that amount from the date of the original judgment because C.A.R. 37 prohibits such an award. We agree.

■ Initially, we note, an award of postjudgment interest may be inappropriate when an appellate court reverses the underlying judgment. *See, e.g., Bainbridge, Inc. v.*

*Douglas County Bd. of Comm'rs*, 55 P.3d 271 (Colo.App.2002). Here, however, the propriety of the original judgment awarding Postle $168,371 was not an issue in *Westec I* and was not affected by that appeal. Read in conjunction with the trial court's August 27, 1998 judgment, it is apparent that *Westec I* reversed that judgment only in part. Westec apparently agrees, having conceded the propriety of postjudgment interest calculated on the original $168,371 award from the date of the 1998 judgment. Thus, we only address the propriety of awarding postjudgment interest on the prejudgment interest.

Pursuant to C.A.R. 37:

> If a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable from the date the judgment was entered in the trial court. If a judgment is modified or reversed with a direction that a judgment for money be entered in the trial court, the mandate shall contain instructions with respect to allowance of interest.

■ In the latter case, if the mandate does not contain instructions regarding the award of postjudgment interest from some date prior to the entry of the judgment on remand, the trial court lacks jurisdiction to award such interest. *See Boryla v. Pash*, 17 P.3d 833 (Colo.App.2000). Interest for the period after the entry of the judgment on remand is governed by § 5–12–102(4), C.R.S.2002.

■ The issue presented by the parties here is whether the $38,866.76 in prejudgment interest awarded is subject to the first or the second sentence of C.A.R. 37. We conclude that it is governed by the second.

Postle relies on cases in which a trial court judgment was reinstated on appeal, *see Fassbinder v. Pennsylvania R.R. Co.*, 233 F.Supp. 574 (W.D.Pa.1964); *Brown v. Med. Mut. Liab. Ins. Soc'y*, 90 Md.App. 18, 599 A.2d 1201 (1992), or in which an existing trial court judgment was reduced on appeal. *See Stewart v. Donges*, 20 F.3d 380 (10th Cir. 1994); *Lowe v. Gen. Motors Corp.*, 527 F.Supp. 54 (N.D.Ala.1981); *Life Ins. Co. v. Johnson*, 725 So.2d 934 (Ala.1998); *Ginn v. Penobscot Co.*, 342 A.2d 270 (Me.1975).

Here, in contrast, while the original trial court judgment awarded damages, it did not award prejudgment interest. The division in *Westec I* reversed that part of the judgment denying prejudgment interest and directed the trial court to make such an award. Thus, the second sentence of C.A.R. 37 is applicable, and because the *Westec I* mandate directing the award of prejudgment interest did not direct interest on that amount from any date before the entry of the judgment on remand, the trial court lacked jurisdiction to award postjudgment interest on the prejudgment interest for any period before April 27, 2001. *See Boryla v. Pash, supra* (in the absence of directions in the mandate, the trial court had no jurisdiction to award interest from the date of the original order on costs where the appellate court reversed the trial court's denial of an award of actual costs with directions to enter such an award); *cf. Magee v. United States Lines, Inc.*, 976 F.2d 821 (2d Cir.1992)(where the appellate court vacated that part of the trial court judgment denying an award of prejudgment interest and directed the entry of such an award, the second sentence of Fed. R.App. P. 37 was applicable).

Thus, in such a case, the only way to invest the trial court with suitable jurisdiction is to file a request with the appellate court to amend its mandate. *See Boryla v. Pash, supra.* Postle made no such motion, so we need not decide whether postjudgment interest on the prejudgment interest from the date of the original judgment would otherwise be proper. *See, e.g., Bancamerica Commercial Corp. v. Mosher Steel of Kansas, Inc.*, 103 F.3d 80 (10th Cir.1996)(motion to reform the mandate to include an award of postjudgment interest).

### B.

Westec next contends that Postle's motion for postjudgment attorney fees and costs was untimely. We disagree.

■ The trial court's original judgment, entered August 27, 1998, determined that any claim for attorney fees under the contract would be limited, because of Postle's failure to mitigate, to the period from February 5, 1996, when the mislocation of the

foundation was discovered, to May 31, 1996. In 1999, the trial court awarded fees for that period. The judgment on remand, entered April 27, 2001, reaffirmed the original judgment. The trial court later granted Postle's motion for postjudgment attorney fees and costs and again denied fees and costs incurred before the final judgment, which it erroneously described as having been entered on April 27, 1998.

We first reject Westec's contention that when the trial court referred to April 27, 1998, it meant April 27, 2001, such that the award of attorney fees should be limited to the $6,230 incurred after the latter date. Postle's motion requested fees and costs from August 3, 1998 to May 8, 2001 in the amount of $115,998.45. The trial court's award of $107,328.37 clearly indicates that it intended to refer to the 1998 judgment.

■ Westec does not dispute that the contract allows an award of costs for a successful appeal. However, Westec contends that, if the trial court intended to refer to the 1998 judgment, then Postle's motion for attorney fees and costs was untimely because it was filed more than fifteen days after the entry of judgment as required by C.R.C.P. 121 § 1–22(2)(b). We are not persuaded.

C.R.C.P. 121 § 1–22(2)(a) provides, in part: This practice standard applies to requests for attorney fees made *at the conclusion of the action* .... It also includes awards of fees made to the prevailing party pursuant to a contract or statute where the award is dependent upon the achievement of a successful result in the litigation in which fees are to be awarded and the fees are for services rendered in connection with that litigation. (Emphasis added.)

Here, the "conclusion of the action" for this purpose is the 2001 judgment on remand. Because Postle's motion was filed within fifteen days of that judgment, it was timely.

## C.

Westec next contends that any award of postjudgment attorney fees should not have exceeded the difference between Postle's original judgment and its recovery on appeal

and remand, that is, the amount of prejudgment interest awarded. We disagree.

■ The reasonableness of attorney fees is a determination of fact for the trial court that will not be disturbed unless it is clearly erroneous and not supported by the evidence.

In awarding attorney's fees, the trial court may consider, among other factors, the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, and the usage in the legal community concerning fees in similar cases. However, no one of these factors is conclusive.

*Hartman v. Freedman,* 197 Colo. 275, 281, 591 P.2d 1318, 1322 (1979) (citations omitted).

■ Here, Westec relies on the fact that Postle ultimately received substantially less than it sought on appeal and remand. However, that fact is insufficient to demonstrate that the trial court's finding of reasonableness was clearly erroneous.

## III.

In its cross-appeal, Postle contends that the trial court erred in its calculation of per diem interest. We agree.

Section 5–12–102(4), provides that, unless otherwise specified in a contract or instrument, interest on a judgment shall accrue at eight percent per annum compounded annually.

■ The award of postjudgment interest under this section is mandatory rather than discretionary. *See Bainbridge, Inc. v. Douglas County Sch. Dist. RE–1,* 973 P.2d 684 (Colo.App.1998). Therefore, the per diem postjudgment interest should be calculated at eight percent of the prejudgment interest and awarded only for the period after April 27, 2001.

Given our resolution of the above issues, we need not address the parties' remaining contentions.

Those parts of the judgment awarding postjudgment interest on the prejudgment interest from the date of the 1998 original

judgment rather than the 2001 judgment on remand and calculating per diem interest at $1.51 are reversed, and the case is remanded to the trial court for calculation of post-judgment interest on the prejudgment interest consistent with this opinion. In all other respects, the judgment is affirmed.

Judge VOGT and Judge DAILEY, concur.