COLORADO COURT OF APPEALS                                  **2016COA128**

Court of Appeals No. 15CA0964
City and County of Denver District Court No. 09CV7321
Honorable Michael A. Martinez, Judge

Mark L. Thompson and Rosalin Rogers,

Plaintiffs-Appellants,

v.

United Securities Alliance, Inc.,

Defendant,

and concerning Catlin Insurance Company (UK) Ltd., Garnishee,

Appellee.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE HARRIS
Ashby, J., concurs
Webb, J., concurs in part and dissents in part

Announced September 8, 2016

Sherman & Howard L.L.C., Christopher R. Mosley, Jennifer M. Morris, Denver, Colorado, for Plaintiff-Appellant

Gordan & Rees LLP, John R. Mann, Denver, Colorado, for Appellee

¶ 1    Plaintiffs Mark L. Thompson and Rosalin Rogers obtained a judgment against United Securities Alliance, Inc., and then instituted garnishment proceedings against United's insurer, defendant Catlin Insurance Company (UK) Ltd.  The district court deducted from the policy limit the amount of attorney fees incurred by Catlin in defending the underlying arbitrations against United, and entered judgment for plaintiffs for the remainder of the policy.

¶ 2    On appeal, plaintiffs contend the district court erred in its determination of reasonable attorney fees and in declining to award pre- and post-judgment interest.  Whether prejudgment interest can be awarded in a garnishment proceeding is an unresolved issue in Colorado.  We affirm.

I.    Background

¶ 3    Catlin issued a liability insurance policy to United, covering claims that might arise from United's business as a securities broker.  The policy allows Catlin to deduct from the policy's liability limit the "reasonable and necessary fees and costs incurred . . . in the defense of a Claim."

1

¶ 4    Plaintiffs received a damages award in an arbitration proceeding against United, which the district court confirmed. To collect on this judgment, plaintiffs then served a writ of garnishment action on Catlin as United's insurer.

¶ 5    In an October 2010 order, the district court ordered Catlin to pay the damages award and found that Catlin could deduct "zero" defense fees and costs from the policy's limits. According to the district court, the heavily redacted invoices submitted by Catlin failed to establish that the fees were "reasonable and necessary."

¶ 6    On appeal, a division of this court affirmed the liability judgment, but remanded for the district court to determine the amount of expenses that Catlin had reasonably incurred in the arbitration, to deduct that amount from the $1 million policy limit, and to order Catlin to pay the plaintiffs, from the remaining policy limit, the amounts due under the judgment. *Thompson v. Catlin Ins. Co. (UK) Ltd.*, slip op. at 14 (Colo. App. No. 10CA2554, Feb. 12, 2012) (not published pursuant to C.A.R. 35(f)) (*Thompson I*).

¶ 7    On remand, the district court found that Catlin had reasonably incurred fees and costs but, faced with the same heavily

redacted invoices (which it found largely "indiscernible"), the court calculated Catlin's expenses based on the amount of fees incurred by plaintiffs' counsel in the underlying arbitration. Using this method, the court found that Catlin could deduct $320,000 in attorney fees from the policy limits.

¶ 8 Catlin again appealed. A division of this court reversed a second time, concluding that the district court's order did not include sufficient findings of facts to support its determination. *Thompson v. Catlin Ins. Co. (UK) Ltd.*, slip op. at 8 (Colo. App. No. 13CA2037, Oct. 16, 2014) (not published pursuant to C.A.R. 35(f)) (*Thompson III*).[1]

¶ 9 Before recalculating the reasonable amount of fees and costs on remand, the district court accepted additional briefing from the parties. This time, along with its briefing, Catlin provided the unredacted copies of the invoices for the two arbitrations, stating that it had finally located them from defense counsel "[a]fter an

---

[1] In *Thompson v. Catlin Ins. Co. (UK) Ltd.*, (Colo. App. No. 11CA1330, Oct. 16, 2014) (not published pursuant to C.A.R. 35(f)) (*Thompson II*), Catlin appealed the trial court's subsequent award of attorney fees to plaintiffs under C.R.C.P. 103, section (8)(b)(5). The fees at issue in *Thompson II* are unrelated to the attorney fees contested here.

exhaustive search." Plaintiffs moved to strike the unredacted invoices as outside the scope of the mandate, and the court denied the motion.

¶ 10 In a thorough and carefully reasoned opinion, the district court relied on record evidence, including the unredacted invoices, to calculate Catlin's reasonable attorney fees and costs, making specific deductions for redundant entries, excessive hours, and other discretionary factors. The court found $452,107.15 of Catlin's requested $545,136.27 reasonable and necessary and deducted this amount from the policy limit. After subtracting amounts Catlin had previously paid plaintiffs, the court ordered Catlin to pay $96,287.68. It denied plaintiffs' requests for pre- and post-judgment interest.

¶ 11 On appeal, plaintiffs contend that the district court acted beyond the scope of the mandate in *Thompson III* by considering the unredacted invoices, and that it erred in denying interest to which they are statutorily entitled.

## II. Unredacted Invoices

¶ 12 Plaintiffs contend that the district court acted beyond the scope of the *Thompson III* mandate because, by considering the unredacted invoices, the district court expressly disregarded the mandate's instruction to review "the existing record." In light of the unusual circumstances of this case, we disagree.

¶ 13 Trial courts have no discretion to disregard binding appellate rulings. Consequently, we review de novo whether a trial court has complied with a prior appellate ruling. *City Council of City of Cherry Hills Vill. v. S. Suburban Park & Recreation Dist.*, 219 P.3d 421, 423 (Colo. App. 2009).

¶ 14 When determining the meaning of a remand order, we consider the disposition and context of the entire opinion. *See In re Marriage of Balanson*, 107 P.3d 1037, 1044 (Colo. App. 2004) (interpreting remand order "in the context of the entire opinion"); *In re Marriage of Ashlock*, 663 P.2d 1060, 1062 (Colo. App. 1983) ("The meaning of a remand is to be determined from the reviewing court's disposition of the issues before it.").

¶ 15    We acknowledge that, in most cases, an instruction to the district court to "review the existing record," and to make a determination "from this record," would amount to an order prohibiting the district court from considering additional evidence. But given the unusual procedural posture of this case, we construe the language as permissive rather than restrictive — in our view, the remand order meant that the district court *could* rely exclusively on the existing record to calculate reasonable fees, not that it *had* to.

¶ 16    The division's opinion in *Thompson III* was the second reversal of the district court's attorney fees order. Twice the district court had essentially disregarded the redacted invoices, complaining that it was impossible to determine the reasonableness of the fees and costs from those invoices.

¶ 17    The division in *Thompson I,* No. 10CA2554, slip op. at 12, noted that the redacted invoices "amply demonstrate[d]" that the expenses were incurred and that at least some were incurred for legitimate reasons. It remanded the case to the district court to

calculate Catlin's reasonable fees, but did not expressly restrict or authorize the consideration of additional evidence.

¶ 18    On remand, Catlin continued to rely on the redacted invoices — though, had it presented the unredacted invoices then, the remand order would not have precluded the court's consideration of them, *see In re Marriage of Ashlock*, 663 P.2d at 1062 (where reviewing court does not include in its mandate a direction concerning additional proceedings, it is within the trial court's discretion to receive additional evidence) — and the court continued to declare them unhelpful in evaluating Catlin's fee request. Consequently, as it had the first time, the district court chose an alternative methodology to compute Catlin's expenses. Instead of analyzing the unredacted entries on the invoices, the district court imputed to Catlin the same amount of fees claimed by plaintiffs' lawyers for their services in connection with the arbitration.

¶ 19    On appeal for the second time, the *Thompson III* division acknowledged the district court's struggle to decipher the largely "indiscernible" invoices, but nonetheless directed the court to provide more specific reasoning to support its fee determination,

7

suggesting that it start with the invoices in the record. The division then laid out the precise analytical path for the district court: after determining the lodestar amount, the court could deduct any hours not reasonably expended, including hours that were not sufficiently documented in the redacted invoices. Next, the district court was told to adjust the lodestar amount after considering six factors relevant to the litigation. The division warned the district court not to cut corners in its analysis by reverting to its earlier method of comparison with opposing counsel's request or by "eyeball[ing]" the fee request and cutting it by some arbitrary percentage. *Thompson III*, No. 13CA2037, slip op. at 13-14.

¶ 20    After providing this guidance, the division directed the district court to "make a more specific determination of the reasonable costs and fees that Catlin may deduct." *Id.* at 14. To accomplish this task, the division instructed the district court to review the existing record, calculate the expenses Catlin had incurred, identify any factors used in making the calculations, and then deduct that amount from the policy limit and order Catlin to pay plaintiffs the amount owed under the judgment.

¶ 21     In our view, having outlined the requisite procedure, the division's reference to the "existing record," *id.* at 15, was merely a way to reassure the district court that it need not start from scratch but could instead perform the necessary factfinding and calculations based on the indisputably less-than-ideal evidence in the record.  We do not interpret the order to preclude the district court's reliance on better information, if such information became available on remand.  *Cf. Moland v. People*, 757 P.2d 137, 141 (Colo. 1988) (remand order instructing that defendant had present need for postconviction relief and ordering district court to resolve motion on the merits did not preclude district court's subsequent determination, based on consideration of new facts, that defendant did not have present need for relief).  After all, the first division, in *Thompson I*, had not limited the court's ability to consider additional evidence.  It is not clear from the second remand order why the *Thompson III* court would have changed course and required the district court to ignore the unredacted invoices.

¶ 22     Our interpretation of the remand order also gives effect to evidentiary rules that favor consideration of all relevant evidence,

*see* CRE 402, with the goal of promoting the "truth-seeking purposes of our judicial system," *Garrigan v. Bowen*, 243 P.3d 231, 238 (Colo. 2010). Over the course of this protracted litigation, two divisions of this court have remanded to the district court to make a specific, record-based calculation of the reasonable amount of attorney fees Catlin could deduct from the policy limit. But an accurate determination has been hampered by the redactions to the invoices. Now that the unredacted invoices have been recovered, we are reluctant, absent some explanation from the division, to read the remand order to limit the district court's wide discretion to consider this superior evidence in making the required calculations.

¶ 23    The dissent suggests that we have placed too much emphasis on the truth-seeking function of the court, reminding us that each day trial courts properly exclude evidence. That is undoubtedly true, but only when some greater interest outweighs the benefit of admitting all of the information that will help the district court to arrive at a reasoned and thorough decision. We agree with the dissent that adherence to remand orders is necessary to ensure finality. But because we do not read the *Thompson III* remand order

10

to prohibit the district court's consideration of the unredacted invoices, we do not perceive adherence to the order as an interest that outweighs (or is even in competition with) the obvious benefit of the complete invoices.

¶ 24     Nor do we perceive any manifest unfairness to the plaintiffs that might outweigh the interest in admitting the unredacted invoices.  The plaintiffs did not assert, and the district court did not find, that the delay in producing the unredacted invoices stemmed from Catlin's bad faith or even an attempt to gain some strategic advantage in the litigation.  Rather, the district court accepted Catlin's explanation that unredacted versions of the invoices were discovered only "after an exhaustive search," and then were produced promptly.  We are in no position to second-guess the district court on this finding of fact.  *See In re Estate of Ramstetter*, 2016 COA 81, ¶ 52.

¶ 25     The dissent says we give short shrift to the fairness issue, but we are unwilling to press an argument that the plaintiffs themselves never made in the district court or on appeal.  In the district court, the plaintiffs complained that reliance on the unredacted invoices

violated the remand order, not that admission of the invoices gave Catlin some unfair advantage or, as the dissent puts it, an impermissible "second bite at the apple." Even on appeal, plaintiffs did not protest the unfairness of the court's reliance on the unredacted invoices; they contended that the district court should have given them an opportunity to challenge those invoices at a second hearing. It was not until oral argument that plaintiffs first invoked fairness, suggesting that Catlin's belated filing of the unredacted invoices should have been precluded as the product of strategic gamesmanship. We would find the argument more persuasive if it were raised in the district court and supported by evidence in the record but, as counsel conceded at oral argument, the record is devoid of such evidence.

¶ 26    As for plaintiffs' argument that they did not have an opportunity to challenge the unredacted invoices, we perceive no error. Plaintiffs contend that the district court should have authorized additional discovery and held a second hearing on the unredacted invoices. But plaintiffs never asked for a hearing or for leave to reopen discovery; they merely asked the district court to

12

strike the invoices from the record on the ground that their admission violated the court of appeals' mandate. Because plaintiffs never asked for this relief, we cannot say that the district court erred in failing to sua sponte reopen the proceedings. *Zeke Coffee, Inc. v. Pappas-Alstad P'ship*, 2015 COA 104, ¶ 36 ("[A] court ordinarily 'will not sua sponte afford a party relief that it has not requested.'" (quoting *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r, Ind. Dep't of Health*, 64 F. Supp. 3d 1235, 1257 n.7 (S.D. Ind. 2014))).

¶ 27 Accordingly, we conclude that the district court did not err in considering the unredacted invoices.

### III. Prejudgment Interest

¶ 28 Plaintiffs next contend that the district court erred in declining to award prejudgment interest pursuant to section 5-12-102(1), C.R.S. 2015. We disagree.

¶ 29 Because prejudgment interest is a question of statutory interpretation, we review it de novo. *Goodyear Tire & Rubber Co. v. Holmes*, 193 P.3d 821, 825 (Colo. 2008).

13

¶ 30    Section 5-12-102(1)(a) provides for the award of prejudgment interest "[w]hen money or property has been wrongfully withheld . . . from the date of wrongful withholding to the date of payment or to the date judgment is entered." This statute, however, does not apply to garnishment proceedings; rather, it governs contract and property damage cases. *See Beren v. Beren*, 2015 CO 29, ¶ 45 (Section 15-12-102 did not apply because "this case is not a contract or property damage case; it is a probate case.").[2]

¶ 31    Further, we agree with the district court that, because garnishment actions do not result in damages to the garnishor, prejudgment interest is not appropriate. Prejudgment interest is a component of compensatory damages, meant to make the plaintiff whole and fully compensate for the loss. *Seaward Constr. Co. v.*

---

[2] We recognize that some cases have applied section 5-12-102(1) in equitable actions, but we find those cases inapplicable. For example, in *Safeco Insurance Co. v. Westport Insurance Corp.*, 214 P.3d 1078, 1080 (Colo. App. 2009), a division of this court determined that a plaintiff could collect prejudgment interest in a contribution action. However, interest was appropriate in that case because the purpose of contribution is to prevent unjust enrichment and "the unjustly enriched party is generally liable for interest on the benefits received." *Id.* (quoting *Martinez v. Cont'l Enters.*, 730 P.2d 308, 317 (Colo. 1986)). In contrast, a garnishee is not unjustly enriched because it possesses assets of a third-party debtor.

*Bradley*, 817 P.2d 971, 978 (Colo. 1991); *Watson v. Pub. Serv. Co. of Colo.*, 207 P.3d 860, 867 (Colo. App. 2008). Absent an express indication of legislative intent to deviate from the principle that prejudgment interest is compensatory, it may be awarded only on compensatory damages. *Seaward Constr. Co.*, 817 P.2d at 978; *Watson*, 207 P.3d at 867. A garnishment proceeding, however, is not a "suit involving money damages"; rather it is an ancillary proceeding to enforce a judgment. *Commercial Claims, Ltd. v. First Nat'l Bank of Glenwood Springs*, 649 P.2d 736, 736 (Colo. App. 1982) (citation omitted). Accordingly, because compensatory damages are not awarded in garnishment proceedings, prejudgment interest is not appropriate.

¶ 32    Moreover, a plaintiff is only entitled to prejudgment interest where there has been a wrongful withholding. "Our case law clarifies that, as a precondition to a wrongful withholding, there must be a party who has acted wrongfully in the legal sense, e.g., a party has breached a contract." *Beren*, ¶ 45. Catlin neither breached a contract with plaintiffs nor damaged physical property, *see id.*, and no court has determined Catlin's conduct to be

15

wrongful. Garnishment actions do not determine liability in the sense of a legal wrong — they simply reach assets of a judgment debtor in the hands of third parties. § 13-54.5-103, C.R.S. 2015; C.R.C.P. 103; *Idaho Pac. Lumber Co., Inc. v. Celestial Land Co. Ltd.*, 2013 COA 136, ¶ 8. Before the garnishment action, Catlin had no legal duties to plaintiffs, and thus the proceeds of the insurance policy cannot have been wrongfully withheld. *See Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362, 364-65 (Colo. 1989) (collecting cases).

## IV. Postjudgment Interest

¶ 33 Finally, plaintiffs contend that an award of postjudgment interest was mandatory under section 5-12-106(1)(b), and the district court erred by denying their request. We disagree.

¶ 34 When a judgment is appealed by a judgment-debtor, section 5-12-106(1)(b) provides for an award of postjudgment interest from the date judgment was first entered in the trial court if "the judgment is modified or reversed with a direction that a judgment for money be entered in the trial court."

¶ 35    However, under C.A.R. 37(b), "[i]f all or part of a judgment is

. . . modified, [or] reversed[] . . . with a direction that a money

judgment be entered in the lower court, the mandate must contain

instructions with respect to allowance of interest."  This rule

provides the appellate courts with exclusive authority to determine

the propriety of an award of postjudgment interest.  *In re Marriage*

*of Gutfreund & Hughes,* 148 P.3d 136, 142 (Colo. 2006).  As a

result, "if the mandate does not contain instructions regarding the

award of postjudgment interest from some date prior to the entry of

the judgment on remand, the trial court lacks jurisdiction to award

such interest."  *Westec Constr. Mgmt. Co. v. Postle Enters. I, Inc.,* 68

P.3d 529, 535 (Colo. App. 2002).

¶ 36    Accordingly, because the *Thompson III* mandate did not direct

the district court to award postjudgment interest, the district court

correctly held that it lacked jurisdiction to make such an award.

*See id.*; *Sperry v. Field,* 186 P.3d 133, 141 (Colo. App. 2008).  The

only way to invest the district court with the necessary jurisdiction

is to file a request with the court of appeals to amend its mandate.

*Westec Constr.,* 68 P.3d at 535; *Boryla v. Pash,* 17 P.3d 833, 835

(Colo. App. 2000).  But plaintiffs did not request this relief.  And because the district court had no jurisdiction to award interest, we need not decide whether postjudgment interest would have been proper under section 5-12-106(1)(b).  *Boryla*, 17 P.3d at 834-35; *see also Pet Inc. v. Goldberg*, 37 Colo. App. 257, 259, 547 P.3d 943, 945 (1975) (if a mandate issues that fails to direct the trial court with respect to the award of interest, or even if it contains an erroneous direction upon the subject, a trial court lacks jurisdiction to grant an award of interest inconsistent with the appellate court's mandate).

¶ 37    We are not persuaded by plaintiffs' argument that this reading of Rule 37 would create an impermissible conflict with section 5-12-106(1)(b).  Rather, the statute merely "states the circumstances wherein interest shall be allowed to a creditor or on a judgment, [while] C.A.R. 37 requires and empowers the appellate court to make the determination of interest to be allowed, if any," and to include appropriate instructions in its mandate.  *Pet Inc.*, 37 Colo. App. at 259, 547 P.2d at 944-45.  Thus, we perceive no conflict.

## V. Conclusion

¶ 38 The judgment is affirmed. In their briefs, plaintiffs requested attorney fees pursuant to either C.A.R. 39.5 (now renumbered as C.A.R. 39.1) or C.R.C.P. 103, section 8(b)(5). In light of our opinion, we decline to award attorney fees on either basis.[3]

JUDGE ASHBY concurs.

JUDGE WEBB concurs in part and dissents in part.

---

[3] Catlin filed a motion to strike plaintiffs' request for attorney fees, noting that they did not raise the C.R.C.P. 103, section 8(b)(5) basis in their opening brief. Since we decline to award attorney fees, this motion is denied as moot.

JUDGE WEBB, concurring in part and dissenting in part.

¶ 39    I concur in all but Part II of the majority opinion. There, the majority concludes that on remand the district court properly allowed Catlin to supplement the record by replacing numerous previously redacted invoices with unredacted versions. But in doing so, the district court departed from plain language of the mandate in *Thompson v. Catlin Insurance Co. (UK) Ltd.*, (Colo. App. No. 13CA2037, Oct. 16, 2014) (not published pursuant to C.A.R. 35(f)) (*Thompson III*). Therefore, and with respect, I dissent.

¶ 40    Everyone would agree that on remand a district court must follow the mandate of an appellate court. *See, e.g.*, *City Council of City of Cherry Hills Vill. v. S. Suburban Park & Recreation Dist.*, 219 P.3d 421, 423 (Colo. App. 2009). The majority recognizes, as do all those who appeared before us, that the remand instruction in *Thompson III* directed the district court to "review the existing record, and from this record, calculate the amount of expenses that Catlin reasonably incurred" in the underlying arbitrations. *Thompson III*, No. 13CA2037, slip op. at 15. This language is clear. And because it is clear, I decline to join the majority in wondering

20

"why the *Thompson III* court would have changed course and required the district court to ignore the unredacted invoices."

¶ 41     Yet, instead of following the plain meaning of this clear language, the majority dismisses it as "merely a way to reassure the district court that it need not start from scratch but could instead perform the necessary factfinding and calculations based on the indisputably less-than-ideal evidence in the record."  But what more could the mandate have said?  Must a mandate say not only what the district court shall do — "from the existing record" — but also what the court may not do — "without taking additional evidence?"  Surely not, as additional language is not necessary if the meaning is otherwise clear.  *BMD Contractors, Inc. v. Fid. & Deposit Co. of Md.*, 679 F.3d 643, 650 (7th Cir. 2012).  And therein lies the problem with the majority's reliance on the lack of "some explanation from the division."

¶ 42     One might well ask whether this case — now in its fourth appeal — cries out for a final resolution.  It does.  But that outcry cannot license appellate disregard of yet another error.

¶ 43    To begin, the majority notes, "we consider the disposition and context of the entire opinion," citing *In re Marriage of Ashlock*, 663 P.2d 1060, 1062 (Colo. App. 1983).  But this principle only frames, it does not decide, the question of how the *Thompson III* mandate should be read.  And unlike the direction in the mandate here — "review the existing record" — the *Ashlock* division pointed out that "the reviewing court [did] not include in its mandate a direction concerning additional proceedings."  *Id.*

¶ 44    Taking up how to read the mandate, I, too, view the remand instructions through the prism of the entire opinion.  This broad perspective does not show us anything in *Thompson III* that even hints at an opportunity to present additional evidence on remand.  To the contrary, the division said that the district court had already "reviewed all the evidence."  *Thompson III*, No. 13CA2037, slip op. at 14.  Given this statement, one might wonder why the district court considered more — but not "newly discovered," as Catlin conceded at oral argument — evidence than it already had.

¶ 45    The division observed that while the district court had identified testimony of Catlin's counsel in the underlying arbitration

22

"as supporting the basis for the award," the court had "not connect[ed] her testimony to the $160,000 amount awarded in each arbitration." *Id.* at 10. Of course, this testimony was in the record.

¶ 46 Next, the division noted that a remand for further findings was necessary because the district court's "order does not specify whether the court used the lodestar amount as a starting point before reducing the fee. We also do not know if the court considered whether Thompson's counsel requested $160,000 as a lodestar amount or as a contingency fee." *Id.* And this testimony was also in the record.

¶ 47 Then the division summarized the familiar lodestar methodology — including the factors used to adjust the lodestar up or down[1] — and directed the district court to "make a more specific determination of the reasonable costs and fees that Catlin may deduct." *Id.* at 14. But the division did not suggest that applying

---

[1] "Factors that the district court may consider include: (1) the amount in controversy; (2) the time required to represent the client effectively; (3) the complexity of the case; (4) the value of the legal services to the client; (5) the existence of a fee arrangement, whether fixed or contingent; and (6) the customary practice in the legal community regarding fees in similar actions." *Thompson v. Catlin Insurance Co. (UK) Ltd.*, slip op. at 12 (Colo. App. No. 13CA2037, Oct. 16, 2014) (not published pursuant to C.A.R. 35(f)).

23

those factors would require the court to look beyond the "existing record," such as moving from the redacted invoices to their now conveniently available unredacted counterparts.

¶ 48 Considering the division's reference to evidence already in the record and its lack of reference to new evidence, by any fair reading the problem in *Thompson III* was insufficient explanation, not a lack of evidence. Thus, on remand, the division's concerns over inadequate findings should have been resolved with further scrutiny of the invoices already in the record — both redacted and unredacted — as well as of the testimony given by arbitration counsel for both parties in the attorney fees hearing.

¶ 49 Then the district court could have provided the additional explanation that the division sought. And the district court could still have concluded — as it had concluded once before — that gaps created by the extensive redactions on many invoices left plaintiffs' fees of $160,000 in each of the arbitrations as the most reliable measure of reasonableness. After all, as the division also held, "no language in *Thompson I* specifically instructed the district court to use the lodestar method." *Id.* at 6.

24

¶ 50    The majority's stated deference to "the truth-seeking purposes of our judicial system," *Garrigan v. Bowen*, 243 P.3d 231, 238 (Colo. 2010), does not tip the scales in favor of admitting the unredacted invoices, for three reasons.

¶ 51    First, the issue before us is not an evidentiary ruling, in which district courts enjoy considerable discretion. *See, e.g., People v. Helms*, 2016 COA 90, ¶ 45 (We review "evidentiary rulings for an abuse of discretion."). Instead, the issue is whether the district court adhered to the plain language of the mandate. And the mandate rule is just that: a rule, not a discretionary option.

¶ 52    Second, every ruling excluding evidence on procedural grounds compromises truth seeking. *See People v. Shreck*, 22 P.3d 68, 76 (Colo. 2001). Yes, as the majority points out, "all of the information . . . will help the district court to arrive at a reasoned and thorough decision." Even so, district courts routinely exclude evidence on procedural grounds, at least where — as here — the countervailing interest is not constitutional. *See People v. Pronovost*, 773 P.2d 555, 558 (Colo. 1989).

¶ 53    Third, and to me most important, in many remands and with the invariably perfect wisdom of hindsight, creative counsel can identify additional evidence — available, as here, but not presented before the appeal — that might tilt the playing field toward a more favorable outcome on remand.  But creativity does not beget unbridled opportunity.  Our supreme court has been reluctant to allow any party "a second bite at the apple." *People v. Null*, 233 P.3d 670, 681 (Colo. 2010) (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978)).  As well, allowing counsel to do so would protract remand proceedings and imperil finality.  *See In re Marriage of Wolford*, 789 P.2d 459 (Colo. App. 1989) (noting that a definite public interest exists in assuring the finality of civil judgments).

¶ 54    Finally, and to no one's surprise, I take issue with the majority's inability to "perceive any manifest unfairness to the plaintiffs that might outweigh the interest in admitting the unredacted invoices."  A close look shows that the unfairness stems from allowing Catlin to escape the strategic decision that it made — long ago and presumably for good reason — to rest its fees claim on the many redacted invoices from which the district court found it

26

"impossible to determine in any manner the activities performed with respect to those entries." Catlin neither suggests that the unredacted invoices are "newly discovered" evidence, nor does it offer any reason why it should be allowed to escape that choice on remand. And for these reasons, I do not see why the burden should be shifted to plaintiffs — as the majority does — to show an insufficient "opportunity to challenge those invoices at a second hearing." The majority does not cite authority — nor am I aware of any — softening the binding effect of remand instructions by engrafting lack of prejudice on to the analysis.

¶ 55    In the end, I would reverse in part because the district court departed from the mandate in *Thompson III* and again direct the court to reconsider the attorney fees issue solely on the basis of the invoices and other information in the record when the mandate issued.