Dennis WATSON, Plaintiff–Appellee
and Cross–Appellant,

v.

PUBLIC SERVICE COMPANY OF COL-
ORADO, d/b/a Xcel Energy, Defendant–
Appellant and Cross–Appellee.

No. 07CA1024.

Colorado Court of Appeals,
Div. VI.

Oct. 16, 2008.

Andrew T. Brake, P.C., Brian Lewis, Englewood, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Brownstein Hyatt Farber Schreck, LLP, Susan P. Klopman, Joshua S. Glasgow, Meghan W. Martinez, Richard P. Barkley, Denver, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge WEBB.

In this wrongful discharge case, defendant, Public Service Company of Colorado d/b/a Xcel Energy, appeals the trial court's judgment entered on a jury verdict awarding plaintiff, Dennis Watson, damages under section 24–34–402.5, C.R.S.2008, which prohibits terminating an employee based on lawful, off-duty conduct. Xcel challenges the denial of its motion to strike Watson's jury demand; jury instructions on the burden of proof; and the award of prejudgment interest. Watson cross-appeals the trial court's summary judgment dismissing his breach of implied contract and promissory estoppel claims, and the amount of its attorney fees award.

## SUMMARY

As to the appeal, we hold that section 24–34–402.5(1), C.R.S.2008, applies to lawful, off-duty conduct, even if work-related; that the judgment must be vacated because the back pay remedy under section 24–34–402.5 is equitable, and thus Watson's claim was not triable to a jury; and that, for the same reason, if the court enters a judgment for Watson on remand, prejudgment interest may not be awarded. Having discerned no other errors, the case need not be retried. Rather, the judge who presided over the trial shall make findings of fact and conclusions of law based on the existing record, and enter judgment.

As to the cross appeal, we uphold summary judgment because the Xcel Internet job posting at issue was not an offer that Watson could accept, and its terms precluded reasonable reliance. We also vacate the attorney fees award, without prejudice to such an award if Watson prevails on remand.

## FACTS

Watson applied to Xcel for a temporary utility worker position in response to an Internet job posting that listed, among other minimum requirements, "must have, or obtain within six months of start date, a valid CDL [commercial driver's license]." Xcel hired Watson on October 28, 2003.

On April 8, 2004, an Xcel manager began reviewing information on temporary utility workers to determine which of them would be extended offers of permanent employment. A report showed that Watson had not yet obtained a CDL.

On April 9, after having encountered working conditions that he considered unsafe, Watson made a telephone complaint to the Occupational Safety and Health Administration (OSHA). When he made the call, he was off duty and not on Xcel's premises. On April 12, an OSHA inspector visited the work site and told Watson's supervisor that a complaint had been made, but he did not identify Watson as the complaining party.

The next day, the manager met with Watson, told him that his temporary employment was over, and terminated him effective immediately. She explained that he was being terminated because he had not obtained a CDL

Watson brought this action against Xcel, alleging breach of implied contract, promissory estoppel, and violation of section 24–34–402.5. He asserted that the job posting assured him of six months to obtain a CDL; that he relied on this assurance in accepting the position; that Xcel terminated him less than six months after his start date, purportedly for not having obtained a CDL; and that this explanation was pretextual because the termination was in retaliation for having made the OSHA complaint.

The trial court granted summary judgment for Xcel on the breach of implied contract and promissory estoppel claims. It denied Xcel's motion to strike the jury demand on the remaining section 24–34–402.5 claim. Xcel objected to jury instructions, which the trial court later gave, that allowed Watson to recover if his OSHA complaint was a motivating factor in the decision to terminate him, even though other factors may also have motivated the decision. The jury returned a verdict for Watson, and the trial court entered judgment of $69,717.08, plus prejudgment interest. The court also awarded Watson attorney fees and costs under section 24–34–402.5(2)(b), C.R.S.2008, but significantly reduced attorney fees for his trial co-counsel.

## APPEAL

Statutory interpretation is a question of law that we review de novo. *Klinger v. Adams County Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006).

We must adopt the statutory construction that "best effectuates the intent of the General Assembly and the purposes of the legislative scheme." *State v. Nieto*, 993 P.2d 493, 501 (Colo.2000). Where the language is clear, we do not look beyond the plain meaning of the words or resort to other rules of statutory construction. *Slack v. Farmers Ins. Exch.*, 5 P.3d 280, 284 (Colo. 2000).

If the statute is reasonably susceptible to multiple interpretations, it is ambigu-

ous, and we apply principles of statutory interpretation. *Williams v. Kunau,* 147 P.3d 33, 36 (Colo.2006). To reasonably effectuate the legislative intent, a statute should be construed as a whole, giving consistent, harmonious, and sensible effect to all of its parts. *People v. Dist. Court,* 713 P.2d 918, 921 (Colo.1986). A construction that would render any clause or provision unnecessary, contradictory, or insignificant should be avoided. *Sulca v. Allstate Ins. Co.,* 77 P.3d 897, 899 (Colo.App.2003). A court must also seek to "avoid an interpretation that leads to an absurd result." *Nieto,* 993 P.2d at 501. A court may consider the legislative history and legislative declaration or purpose. § 2–4–203(1)(c), (g), C.R.S.2008.

### I. Applicability to Work–Related Conduct

Xcel first contends section 24–34–402.5 does not apply to Watson's OSHA complaint because it was intended to protect only private activities unrelated to work. We disagree.

■ The statute prohibits an employer from terminating an employee because the employee engaged in *"any* lawful activity off the premises of the employer during non-working hours...." § 24–34–402.5(1) (emphasis added). "Any" means "all." *Kauntz v. HCA–Healthone, LLC,* 174 P.3d 813, 817 (Colo.App.2007). We are "not to presume that the legislative body used language 'idly and with no intent that meaning should be given to its language.'" *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.,* 109 P.3d 585, 597 (Colo. 2005) (quoting *Carlson v. Ferris,* 85 P.3d 504, 509 (Colo.2003)). And as a remedial statute, section 24–34–402.5 should be broadly construed. *Colo. & S. Ry. Co. v. State R.R. Comm'n of Colo.,* 54 Colo. 64, 77, 129 P. 506, 512 (1912) (where an act is remedial, it will be liberally construed to accomplish its objective); *USA Tax Law Ctr., Inc. v. Office Warehouse Wholesale, LLC,* 160 P.3d 428, 434 (Colo.App.2007).

Because we discern no ambiguity in this language, we decline Xcel's invitation to examine the legislative history. *See* Jessica Jackson, Comment, *Colorado's Lifestyle Discrimination Statute: A Vast and Muddled Expansion of Traditional Employment Law,* 67 U. Colo. L.Rev. 143, 143 n. 5 (1996) (statute was originally proposed by the tobacco lobby to protect smokers and coverage of "all lawful activities" was intended to make bill more appealing to legislature as a whole).

Nevertheless, Xcel argues that even if the statute is not ambiguous, permitting a claim based on off-duty conduct that is work-related would lead to the absurd result that an employee could elect between two statutes with different procedural requirements to prosecute a claim based on the same protected conduct. We are not persuaded.

According to Xcel, section 24–34–402(1)(e)(IV), C.R.S.2008, recognizes a retaliation claim for certain work-related conduct that would also be protected by a broad reading of section 24–34–402.5, but it is subject to a six month statute of limitations and a filing requirement with the Colorado Civil Rights Commission. In contrast, a division of this court has held that section 24–34–402.5 is subject to a two year statute of limitations and has no administrative filing requirement. *See Galvan v. Spanish Peaks Reg'l Health Ctr.,* 98 P.3d 949, 951 (Colo.App. 2004).

This conflict is not before us. Watson never asserted a retaliation claim under section 24–34–402(1)(e)(IV), and Xcel does not explain how he could have done so. Xcel's "absurd results" argument does not account for the principle that where two statutes address the same subject matter, specific provisions prevail over general provisions. *See, e.g., Stamp v. Vail Corp.,* 172 P.3d 437, 447 (Colo.2007); *cf.* § 2–4–205, C.R.S.2008.

Xcel's reliance on the statement in *Marsh v. Delta Air Lines, Inc.,* 952 F.Supp. 1458, 1462–63 (D.Colo.1997), "the statute shields employees who are engaging in private off-the-job activity, that is unrelated to the employees['] job duties," is misplaced. As authority for this statement, the *Marsh* court cited *Evans v. Romer,* 882 P.2d 1335, 1346–47 (Colo.1994), *aff'd,* 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). But *Evans* did not involve a claim under section 24–34–402.5, and it only noted that the statute

protected "any legal, off-duty conduct such as smoking." 882 P.2d at 1346 n. 9.

The *Marsh* court concluded that the statutory defense for an employer restriction on off-duty conduct that "[r]elates to a bona fide occupational requirement," section 24–34–402.5(1)(a), C.R.S.2008, precluded relief because, on the facts presented, such requirements included "an implied duty of loyalty, with regard to public communications" by an employee critical of the employer. 952 F.Supp. at 1463. No Colorado appellate opinion has approved the *Marsh* court's analysis. Here, Xcel raises no such defense.

■ Accordingly, we conclude that section 24–34–402.5(1) applies to lawful, off-duty conduct, whether or not work-related, such as Watson's complaint to OSHA.

## II. Right to Jury Trial

■ Xcel next contends the trial court erred in allowing Watson's claim to be tried to a jury. We agree.

Our supreme court has recognized but declined to resolve this issue. *Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371, 376 n. 6 (Colo. 1997). While divisions of this court have heard appeals arising from jury verdicts, in those appeals the jury was not challenged. *Borquez v. Robert C. Ozer, P.C.*, 923 P.2d 166 (Colo.App.1995), *aff'd in part and rev'd in part*, 940 P.2d 371 (Colo.1997); *Gwin v. Chesrown Chevrolet, Inc.*, 931 P.2d 466 (Colo.App. 1996).

■ Actions for money damages are considered legal and actions seeking to invoke the coercive power of the court are considered equitable. *Peterson v. McMahon*, 99 P.3d 594, 597 (Colo.2004) (citing 1 Dan B. Dobbs, *Dobbs Law of Remedies: Damages–Equity–Restitution* § 2.6(3) (2d ed.1993) ). A jury trial is required only where the relief sought is to enforce legal, rather than equitable, rights. *Id.; see also Johnson v. Neel*, 123 Colo. 377, 388, 229 P.2d 939, 944 (1951) (trial by jury in civil actions is not a matter of constitutional right in Colorado). In deciding whether a remedy is legal or equitable for purposes of a jury trial, the "determinative issue is the characterization of the nature of the relief sought." *Cont'l*

*Title Co. v. Dist. Court*, 645 P.2d 1310, 1316 (Colo.1982).

## A. Plain Language

Under section 24–34–402.5(2)(a), C.R.S. 2008, a claimant "may bring a civil action for damages in any district court of competent jurisdiction and may sue for all wages and benefits that would have been due him or her ... had the discriminatory or unfair employment practice not occurred," as the "sole remedy." § 24–34–402.5(2)(a). This language describes a back pay remedy. *See Black v. Waterman*, 83 P.3d 1130, 1133 (Colo.App. 2003) (defining back pay as the "difference between a plaintiff's actual earnings and the earnings that would have been received, but for discrimination, to the date of judgment.").

■ Back pay under Part 4 of the Colorado Civil Rights Act (CRA), sections 24–34–401 to –406, C.R.S.2008, is an equitable remedy. *Cont'l Title Co.*, 645 P.2d at 1317; *see also City of Colorado Springs v. Conners*, 993 P.2d 1167, 1175 (Colo.2000). Its purpose is to make the plaintiff whole "but for the discriminatory conduct," not to compensate for personal injuries. *Conners*, 993 P.2d at 1175; *Brooke v. Restaurant Servs., Inc.*, 906 P.2d 66, 71 (Colo.1995) (finding the CRA's provision for back pay is not designed "primarily to compensate individual claimants, but to eliminate unfair or discriminatory practices as defined by the Act"). In private actions under the CRA, relief is limited to "reinstatement with back pay," which does not "create a legal claim for damages." *Agnello v. Adolph Coors Co.*, 695 P.2d 311, 313 (Colo.App.1984).

■ We are not persuaded otherwise by Watson's argument that the word "damages" in section 24–34–402.5(2)(a) entitles him to a jury trial. "[N]ot all forms of monetary relief need necessarily be characterized as legal relief for purpose of the jury trial requirement." *Cont'l Title Co.*, 645 P.2d at 1318. Even though a plaintiff seeks to recover money damages, the plaintiff is not entitled to a jury trial if the essence of the action is equitable in nature. *Snow Basin, Ltd. v. Boettcher & Co.*, 805 P.2d 1151, 1154

(Colo.App.1990)(money damages sought on promissory estoppel claim).

Watson's reliance on the "recovery of specific real or personal property" and "injuries to person or property" phrases in C.R.C.P. 38(a) is misplaced.

The former phrase does not encompass "wrongfully withheld wages and benefits" under section 24–34–402.5(2)(a) because the statutory claim is not for specific funds. *See Plains Iron Works Co. v. Haggott,* 72 Colo. 228, 230–31, 210 P. 696, 697 (Colo.1922); *cf. Rhino Fund, LLLP v. Hutchins,* —— P.3d ——, ——, 2008 WL 2522308 (Colo.App. No. 06CA 1172, June 26, 2008) ("An action will lie for the conversion of money where there is an obligation to return or otherwise particularly treat specific money.").

The latter phrase deals with a tort claim in the nature of compensation for personal injuries. *See Brooks v. Jackson,* 813 P.2d 847, 848 (Colo.App.1991)("Torts may be divided into two general classes—the first, designated as 'property torts,' embracing all injuries and damages to property ...; the second, known as 'personal torts,' including all injuries to the person ...." (quoting *Mumford v. Wright,* 12 Colo.App. 214, 217, 55 P. 744, 746 (1898), *overruled on other grounds by Publix Cab. Co. v. Colo. Nat'l Bank,* 139 Colo. 205, 338 P.2d 702 (1959)) ). The CRA does not create such a claim. *See Conners,* 993 P.2d at 1174 (CRA actions "neither lie in tort nor could lie in tort.").

Nevertheless, we recognize that section 24–34–405, C.R.S.2008, provides for the equitable remedy of reinstatement, to which back pay is incidental. *See Cont'l Title Co.,* 645 P.2d at 1317. In contrast, section 24–34–402.5 provides only for back pay. Hence, we turn to the General Assembly's placement of this statute within the CRA.

### B.   Legislative Placement

As amended in 1979, the CRA was intended to provide a "mechanism by which Colorado could eradicate the underlying causes of discrimination and halt discriminatory practices." *Red Seal Potato Chip Co. v. Colorado Civil Rights Comm'n,* 44 Colo.App. 381, 385, 618 P.2d 697, 700 (1980).

Section 24–34–402.5 was enacted in 1990 and placed by the General Assembly within the "discriminatory or unfair employment practices" section of the CRA, sections 24–34–401 to –406. *See* § 2–5–101, C.R.S.2008 (reviser of statutes is under the supervision of the committee on legal services); § 2–3–702, C.R.S.2008 (reviser compiles statutes and arranges them in such form as the committee on legal services directs); § 2–3–502, C.R.S.2008 (committee on legal services composed of ten members of the General Assembly). Indeed, section 24–34–402.5(2)(a) refers to "the discriminatory or unfair employment practice."

When the General Assembly placed section 24–34–402.5 within this part of the CRA, it is presumed to have been aware of precedent treating back pay under the CRA as equitable, and not triable to a jury. *See In re United States Dist. Court.,* 179 Colo. 270, 275, 499 P.2d 1169, 1171 (1972) (courts must presume that a statute was passed with deliberation and full knowledge of all existing law dealing with the same subject). Here, we must presume that the General Assembly intended the back pay remedy described in section 24–34–402.5 to be equitable, and for that reason not triable to a jury. *See Cont'l Title Co.,* 645 P.2d at 1318 (finding discriminatory or unfair employment practices section within the CRA does not provide for jury trial).

Comparing section 24–34–402.5, which does not provide for a jury, with section 24–34–603, C.R.S.2008, of the CRA public accommodation section, which was in effect when section 24–34–402.5 was enacted and does provide for a jury, also indicates that the General Assembly did not intend a section 24–34–402.5 claim to be triable to a jury. *Cf. Cont'l Title Co.,* 645 P.2d at 1317 ("Comparison of the remedies provided in sections 24–34–603 and 24–34–405 is particularly instructive....").

Section 24–34–603 provides in relevant part:

The county court ... shall have jurisdiction in all civil actions brought under this part 6 to recover damages to the extent of the jurisdiction of the county court to recover a money demand in other actions.

Either party shall have the right to have the cause tried by jury....

Had the General Assembly intended to provide a jury trial under section 24–34–402.5, it would have specifically so indicated, as it did in section 24–34–603. *See, e.g., Pueblo Bancorporation v. Lindoe, Inc.,* 63 P.3d 353, 362 (Colo.2003)(finding use of fair market value damages measure in many statutes indicates that General Assembly knew how to use the phrase); *Turbyne v. People,* 151 P.3d 563, 568 (Colo.2007) (comparing other provisions within same statutory scheme to conclude that had the General Assembly intended to allow a police officer to require a drunk driver to take alternative form test, it would have said so).

Accordingly, we conclude that the trial court erred in denying Xcel's motion to strike the jury demand. This conclusion requires that the judgment for Watson be vacated and the case be remanded. However, we briefly address Xcel's arguments as to prejudgment interest and the burden of proof because these issues are likely to arise on remand.

### III. Remand Issues

#### A. Prejudgment Interest

Our conclusion that the remedy afforded under section 24–34–402.5 is equitable precludes prejudgment interest on any judgment entered in favor of Watson on remand.

Prejudgment interest is a form of compensatory damages intended to address delay in the receipt of money to which the plaintiff was entitled. *Seaward Constr. Co. v. Bradley,* 817 P.2d 971, 978 (Colo.1991); *Witt v. State Farm Mut. Auto. Ins. Co.,* 942 P.2d 1326, 1327 (Colo.App.1997).

Absent an express indication of legislative intent to deviate from the principle that prejudgment interest is compensatory, it will be awarded only on compensatory damages. *Seaward Constr. Co.,* 817 P.2d at 978 (examining the compensatory policy and intent of prejudgment interest statutes). Back pay is not a form of compensatory damages. *Conners,* 993 P.2d at 1174; *Brooke,* 906 P.2d at 71. And section 24–34–402.5 does not provide for prejudgment interest.

#### B. Jury Instructions

Xcel contends the jury instructions should have contained a "but for" causation element. Watson responds that the jury instructions properly allowed for recovery under a "mixed motive" approach to causation. *Cf.* Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(m) (2008) ("an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice").

Although the wording of the jury instructions is moot, for the trial court's guidance on remand we note that section 24–34–402.5 contains no language supporting a mixed motive burden of proof. Instead, it uses the phrase "due to." Rather, in making conclusions of law the trial court should be guided by *Robert C. Ozer, P.C.,* 940 P.2d at 375 (a jury instruction submitted pursuant to section 24–34–402.5 would "necessarily include an element providing that the employee was discharged because he or she engaged in lawful activity away from the employer's premises during nonworking hours").

### CROSS APPEAL

We review a summary judgment de novo. *Brodeur v. Am. Home Assurance Co.,* 169 P.3d 139, 146 (Colo.2007). Summary judgment is a drastic remedy appropriate only when the pleadings and supporting documents show that no genuine issue of material fact exists, and the moving party is entitled to summary judgment as a matter of law. *In re Tonko,* 154 P.3d 397, 402 (Colo.2007); C.R.C.P. 56(c). The nonmoving party is entitled to all favorable inferences reasonably drawn from the undisputed facts, and all doubts must be resolved against the moving party. *Tonko,* 154 P.3d at 402; *Natural Energy Res. Co. v. Upper Gunnison River Water Conservancy Dist.,* 142 P.3d 1265, 1276 (Colo.2006).

In Colorado, employment is rebuttably presumed to be "at will," and an employee may be terminated without cause

or notice. *Cont'l Air Lines, Inc. v. Keenan,* 731 P.2d 708, 711 (Colo.1987); *Wisehart v. Meganck,* 66 P.3d 124, 126 (Colo.App.2002). The employee bears the burden of overcoming this presumption, *Schur v. Storage Tech. Corp.,* 878 P.2d 51, 53 (Colo.App.1994), and may do so under either an implied contract or a promissory estoppel theory. *See Crawford Rehab. Servs., Inc. v. Weissman,* 938 P.2d 540, 547 (Colo.1997). Neither theory requires that the parties engage in pre-employment negotiations or agree on the contract. *Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1349 (Colo.1988). However, unless the employee's preliminary factual showing overcomes the "at will" presumption, the employee's cause of action fails. *Cont'l Air Lines, Inc.,* 731 P.2d at 712.

### I. Implied Contract

■ We reject Watson's contention that the Internet posting was an offer which he accepted, thereby creating an implied contract.

■ An employee can prevail on an implied contract theory if the employee proves that the employer made an offer and that the employee's initial or continued employment constituted acceptance. *Id.* at 711; *see also Churchey,* 759 P.2d at 1349. However, the employer must manifest its willingness to enter into a bargain in such a way as to justify the employee in understanding that assent was invited by the employer *and* that the employee's assent would conclude the bargain. *Cont'l Air Lines, Inc.,* 731 P.2d at 711–12 (citing Restatement (Second) of Contracts § 24 (1981)). Such a manifestation shows that the employer intended to make an offer for a unilateral contract, *id.* at 712 n. 1, thus demonstrating willingness to enter into a bargain. *Indus. Prods. Int'l, Inc. v. Emo Trans, Inc.,* 962 P.2d 983, 988 (Colo.App. 1997); *see also Scoular Co. v. Denney,* 151 P.3d 615, 619 (Colo.App.2006) (defining unilateral contract as an offer requesting a return performance rather than a promise to perform).

■ The terms of the offer must be sufficiently definite that the promises and performances of each party are reasonably certain. *Stice v. Peterson,* 144 Colo. 219, 224,

355 P.2d 948, 952 (1960); *see also Sheridan Redev. Agency v. Knightsbridge Land Co.,* 166 P.3d 259, 262 (Colo.App.2007). For the following reasons, the Internet posting to which Watson responded does not meet these criteria.

We agree with Xcel that the Internet posting is an advertisement. It was directed to the public for the purpose of drawing attention to employment opportunities at Xcel. *See Black's Law Dictionary* 59 (8th ed.2004)(defining "advertising" as "[t]he action of drawing the public's attention to something to promote its sale"); *Webster's Third New International Dictionary* 31 (2002) ("advertisement: a calling attention to or making known"). On appeal, Watson does not argue to the contrary.

■ The rule is "well established" that most advertisements are mere notices and solicitations for offers which create no power of acceptance in the recipient. *Mesaros v. United States,* 845 F.2d 1576, 1580 (Fed.Cir.1988); *Leonard v. Pepsico, Inc.,* 88 F.Supp.2d 116, 123 (S.D.N.Y.1999), *aff'd,* 210 F.3d 88 (2d Cir.2000). Thus, an advertisement usually is not transformed into an enforceable offer merely by an expression of willingness to accept. *Leonard,* 88 F.Supp.2d at 123.

This rule does not apply where the advertisement is "clear, definite, and explicit, and leaves nothing open for negotiation." *Lefkowitz v. Great Minneapolis Surplus Store, Inc.,* 251 Minn. 188, 86 N.W.2d 689, 690–91 (1957)("Saturday 9 A.M. Sharp 3 Brand New Fur Coats Worth to $100.00 First Come First Served $1 Each" sufficiently definite on terms to create an offer); *see also* 1 Williston, *Contracts* § 27 (rev.ed).

Here, viewing the evidence and inferences to be drawn in the light most favorable to Watson, we discern no genuine issue of material fact whether the Internet posting was an offer.

The posting included information concerning Position Title, Position Summary, and Minimum Requirements, but it did not mention salary or start date. Thus, key terms are neither clear nor definite. Further, the

posting explained that it is an "applicant pool posting for consideration in future openings;" that, in order to "fill this position continuously," Xcel "maintains a pool of interested and qualified applicants who are contacted as soon as openings become available;" that "[y]ou will be contacted only if you are selected for an interview;" and that "Xcel Energy reserves the right to close this position at any time."

Therefore, because the posting only solicited responses from persons wishing to be included in the pool of applicants who might be interviewed, it did not give Watson the power of acceptance, and his response could not alone consummate a bargain. *See Cont'l Air Lines, Inc.,* 731 P.2d at 711–12.

The missing terms—an employment offer, a salary, and a start date—were necessarily supplied when Watson was hired. During this process, however, Watson acknowledged that he was seeking a temporary position with no promise of full-time employment when he wrote "I am seeking employment with Xcel, even though it might be temporary" on his application and when he received a printed form at his interview notifying him that "this position is a temporary position ... for a maximum of six months." He also acknowledged receiving the Xcel Energy Employee Handbook, which states that *"you are an employee at-will, which means that you can ... be terminated at any time, with or without cause and with or without notice."* (Emphasis in original.)

These clear and conspicuous disclaimers further preclude an implied contract. *George v. Ute Water Conservancy Dist.,* 950 P.2d 1195, 1198 (Colo.App.1997); *see also Hoyt v. Target Stores,* 981 P.2d 188, 193–94 (Colo.App.1998)(summary judgment appropriate when an employee handbook contains such disclaimers); *Middlemist v. BDO Seidman, LLP,* 958 P.2d 486, 494 (Colo.App.1997) (same).

We are not persuaded otherwise by Watson's argument that the disclaimer failed specifically to negate the alleged promise in the Internet posting that he could not be terminated within six months of his start date for lack of a CDL. The disclaimer warned him that he could be terminated "at any time,

with or without cause." Hence, decisions enforcing promises on conditions of employment other than discharge are inapposite. *See, e.g., Duran v. Flagstar Corp.,* 17 F.Supp.2d 1195, 1201–02 (D.Colo.1998)(at-will disclaimer did not bar claim based on policy against sexual harassment); *Stahl v. Sun Microsys., Inc.,* 775 F.Supp. 1394, 1396 (D.Colo.1991) (statement of at-will status did not bar claim based on incentive compensation plan), *aff'd,* 19 F.3d 533 (10th Cir.1994).

Accordingly, we conclude that Xcel's Internet posting was not an offer, and therefore the trial court properly granted summary judgment in favor of Xcel on the implied contract claim.

## II. Promissory Estoppel

■ We also reject Watson's contention that a jury could find he reasonably relied on the Internet posting in believing that if hired he would not be terminated in less than six months for failure to obtain a CDL.

■ An employee may be entitled to relief under a promissory estoppel theory if the employee can demonstrate that: the employer should reasonably have expected the employee to consider the employer's communication as a promise from the employer; the employee reasonably relied on the promise to his detriment; and injustice can be avoided only by enforcing the promise. *Cont'l Air Lines,* 731 P.2d at 712; *Crawford Rehab. Servs.,* 938 P.2d at 547; *Shaw v. Sargent School Dist. No. RE–33–J,* 21 P.3d 446, 448 (Colo.App.2001).

■ But like the purported offer at issue under the implied contract theory, to be the basis for promissory estoppel, a statement must be "sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms." *Hoyt,* 981 P.2d at 194. In the employment context, to be enforceable the employer's statement must disclose a promissory intent or be reasonably construed as a commitment by the employer, and it must be sufficiently definite to allow a court to understand the nature of the obligation undertaken. *Id.; see also Soderlun v. Pub. Serv. Co.,* 944 P.2d 616, 620 (Colo.App.1997). A mere

"vague assurance" is neither a promise nor a statement that can reasonably be relied on. *Hoyt*, 981 P.2d at 194.

Again viewing the evidence and inferences to be drawn from the evidence in the light most favorable to Watson, we discern no genuine issue of material fact whether reliance on Xcel's Internet posting was reasonable.

Watson could not reasonably have understood Xcel's advertisement as a promise that he would be permanently employed because it stated that the position opening was for a temporary position. The statements that "You will only be contacted if you are selected for an interview" from an "applicant pool," at some unspecified future time, precluded reasonable reliance on the reference to "obtain within six months of start date, a valid CDL" as promissory intent on the part of Xcel. In addition, Watson acknowledged a disclaimer after he had applied in response to the Internet posting, and he does not assert any post-hire reiteration of the six month deadline. *See Fair v. Red Lion Inn*, 920 P.2d 820, 825 (Colo.App.1995), *aff'd*, 943 P.2d 431 (Colo.1997)(disclaimer not a defense to later promise of medical leave).

Accordingly, we conclude that Watson's asserted reliance on the Internet advertisement was not reasonable, and therefore the trial court properly granted summary judgment in favor of Xcel on the promissory estoppel claim.

### III.  Attorney Fees

Watson also contends the trial court erred in limiting the attorney fees awarded for the participation of his co-counsel at trial. Because the judgment for Watson must be vacated, we also vacate the attorney fees award, but do so without prejudice to another fees award, if Watson prevails on remand.

The judgment and the attorney fees award are vacated, and the case is remanded for

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

further proceedings consistent with this opinion.

Judge BERNARD and Judge KAPELKE \*, concur.

