In re the MARRIAGE OF Natalie
ANTHONY–GUILLAR,
Appellant,

and

Steven Allan Guillar, Appellee.

No. 07CA2224.

Colorado Court of Appeals,
Div. VI.

March 19, 2009.

§ 24–51–1105, C.R.S.2008.

Jennifer Anntoinette Rivera & Associates, Jennifer A. Rivera, Denver, Colorado, for Appellant.

Dennis J. Jacobson, Lakewood, Colorado, for Appellee.

Opinion by Judge BERNARD.

In this post-dissolution of marriage action, Natalie Anthony–Guillar (mother) appeals the district court's adoption of a magistrate's order crediting Steven Allan Guillar (father) with an overpayment of child support, reducing the total child support arrearages to zero, and sanctioning her for failing to disclose income. We affirm in part, reverse in part, and remand for further proceedings.

## I. Background

The marriage between mother and father was dissolved in 2000, and mother was named the primary residential parent for their only child. The decree incorporated a separation agreement providing that father would pay mother $420 monthly in child support and maintain health coverage for the child; and the parties would pay any uninsured extraordinary medical expenses in excess of $100 in proportion to their respective incomes.

In 2005, mother asked the magistrate to hold father in contempt for failure to pay child support and medical expenses, and sought to garnish his wages. Father objected to the wage assignment and filed a motion to modify child support.

At the hearing, mother presented evidence that she was disabled. Father presented evidence that, beginning on a date after the original decree was entered, mother received monthly Social Security checks of $559 that paid a benefit on behalf of the child because of mother's disability.

After the hearing, the magistrate issued an order finding that father was in contempt for his failure to pay child support; that he owed mother $15,323 in child support arrearages; and that the Social Security disability payment that mother received for the child should be considered as mother's income. Finally, the magistrate awarded mother $5000 in attorney fees for her pursuit of the contempt citation.

Father filed a timely motion for district court review of the magistrate's order pursuant to C.R.M. 7(a). The district court affirmed in part and reversed in part, remanding the case to the magistrate for consideration of whether mother failed to inform father of the child's disability income and whether the disability payments diminished the child's needs.

After a hearing on remand, at which mother stated that all of the benefit payments were used for the child's needs, the magistrate issued a new order. He found that (1) the disability payments, which had since risen to $638 per month, were the child's income; (2) this income reduced the child's need for support; (3) father had overpaid his child support obligation by $8778.20 because of the child's income; and (4) father should be credited with the $5000 in attorney fees previously awarded to mother. Thus, the magistrate reduced the total amount of child support arrearages payable by father to $1645.80.

The magistrate also found that mother deliberately did not notify father about the disability payments, thus misleading father about the child's resources; and that mother should not profit from her nondisclosure or deceit. Thus, the magistrate ordered mother to pay father $1645.80 in attorney fees, which effectively reduced the total amount of arrearages father owed to zero.

On review, the district court concluded that the magistrate's order was supported by the record and was consistent with the remand order. Thus, the district court adopted the magistrate's order as an order of the court.

## II. District Court Review of Magistrate Orders

Under C.R.M. 7(a)(8), a district court, when evaluating the merits of a petition to review a magistrate's decision, shall consider it "on the basis of the petition and briefs filed, together with such review of the record as is necessary." Under C.R.M. 7(a)(9), a magistrate's findings of fact "may not be altered unless clearly erroneous." After this review, C.R.M. 7(a)(10) provides the district court with authority to "adopt, reject, or modify the [magistrate's] initial order or judgment."

Although a district court may, in the process of review, "conduct further proceedings" or "take additional evidence," C.R.M. 7(a)(8), this process has an "appellate character." *See People in Interest of M.A.M.,* 167 P.3d 169, 173 (Colo.App.2007). Our review of the district court's decision is "similar to a second level of appellate review." *People in Interest of J.G.,* 97 P.3d 300, 302 (Colo.App. 2004).

## III. Analysis

Mother contends the magistrate made a mistake of law by treating the disability payments as the child's income instead of mother's income, and that the magistrate abused his discretion by effectively reducing the arrearages to zero as a direct result of her failure to inform father that she was receiving benefit payments. We disagree.

We begin by noting that the pertinent statute, section 14–10–115, C.R.S.2008, was recodified in 2007. Although many of the proceedings in this case occurred in 2005, and the relevant statutory subsections ap-

peared in different places in section 14–10–115, we shall use the current citations for clarity's sake, except when we discuss statutory history, where we use the citations in effect at the time of statutory amendments.

### A. Ongoing Child Support

#### 1. Introduction

Our analysis focuses on several subsections of section 14–10–115:

- Subsection (2)(b)(II) and (V) require trial courts, when setting a child support figure, to consider the custodial parent's and the noncustodial parent's financial resources.
- Subsection (5)(a) states that the court should refer to enumerated factors when determining each parent's gross income for purposes of using the statutory guidelines to set a child support figure.
- Subsection (5)(a)(I)(P) sets forth one of the enumerated factors to be included in gross income, which is income from

[s]ocial security benefits, including social security benefits actually received by a parent as a result of the disability of that parent or as the result of the death of the minor child's stepparent[,] but not including social security benefits received by a minor child or on behalf of a minor child as a result of the death or disability of a stepparent of the child.

- Subsection (5)(a)(II)(D) states that

[s]ocial security benefits received by the minor children, or on behalf of the minor children, as a result of the death or disability of a stepparent are not to be included as income for the minor children for the determination of child support.

- Subsection (11)(c) adds that

[i]n cases where the custodial parent receives periodic disability benefits granted by the federal "Old-age, Survivors, and Disability Insurance Act" on behalf of dependent children due to the disability of the noncustodial parent or receives employer-paid retirement benefits from the federal government on behalf of dependent children due to the retirement of the noncustodial parent, the noncustodial parent's share of the total child support obligation

... shall be reduced in an amount equal to the amount of the benefits.

Reading subsections (5)(a)(I)(P), (5)(a)(II)(D), and (11)(c) together, we conclude it is clear that the General Assembly set out rules addressing two situations in which disability benefits are paid:

- If the custodial parent receives benefit payments because the noncustodial parent is disabled, the noncustodial parent's child support payment is reduced on a dollar-for-dollar basis; and
- If the child or the custodial parent receives benefit payments because the child's stepparent is dead or disabled, then those payments are not to be treated as the child's income.

However, this appeal concerns a third situation, for which a rule is not clearly spelled out. As explained below, a parent may receive Social Security Disability Insurance benefits when he or she becomes disabled. Further, that person's child may also be entitled to receive Social Security disability benefits on account of a parent's disability. Federal law authorizes the disabled parent who has custody of the child to receive those benefits on the child's behalf when the child is not mature enough to handle the payments responsibly.

As indicated above, the statutes at issue here state that disability benefits "actually received by a parent as a result of the disability of that parent" are to be included in that parent's gross income for purposes of calculating the parent's child support obligation. The issue we face, therefore, is whether the phrase "actually received" refers only to the parent's own disability benefits, or whether it also includes benefits a disabled parent receives on behalf of his or her child.

On remand, the magistrate determined that the disability benefit payments were the child's income, and that they would be used to reduce father's support obligation because the disability payments diminished the child's actual needs. Mother argues that this determination was erroneous as a matter of law, because the relevant statutes require that those payments be included in mother's gross

income, because she received the benefit payments as a result of her disability.

Treating the benefit payments as gross income to mother, instead of as income to the child, can have significant consequences. For example, the magistrate's order here effectively reduced father's child support obligation on a dollar-for-dollar basis. In contrast, including those payments in mother's gross income would have proportionately reduced, but not eliminated, father's support obligation, because mother's gross income had increased while father's gross income remained the same. *See* § 14–10–115(7)(a)(I)(A), C.R.S.2008 ("The basic child support obligation shall be divided between the parents in proportion to their adjusted gross incomes."); § 14–10–115(8)(b), C.R.S. 2008 (computation of child support in cases of shared physical care).

### 2. Principles of Statutory Construction

Our purpose in interpreting a statute is to give effect to the legislature's intent and the purposes of its legislative scheme. If the statute's language is clear, we look only to its plain meaning. *Watson v. Public Service Co.*, 207 P.3d 860, 863, 2008 WL 4593049 (Colo.App. No. 07CA1024, Oct. 16, 2008).

However, if a statute is reasonably susceptible of more than one interpretation, it is ambiguous, and we apply the familiar tools of statutory construction. These include construing the statute as a whole to give the entire statute consistent, sensible, and harmonious effect. We are required to presume that the legislature intended a just and reasonable result. § 2–4–201(1)(c), C.R.S.2008. Thus, we avoid any constructions that would render any parts of the statute unnecessary or contradictory, and we avoid interpretations that would render all or part of the statute absurd. *Watson*, 207 P.3d at 864. Our task is aided by looking to legislative history, prior law, and the goal of the statutory scheme. *Bd. of County Comm'rs v. Costilla County Conservancy District*, 88 P.3d 1188, 1193 (Colo.2004).

### 3. "Actually Received"

#### a. Social Security Disability Payments

■ When a person becomes disabled, he or she may receive a Social Security insurance benefit. 42 U.S.C. § 423(a)(1). His or her children are also entitled to Social Security disability insurance benefits if they are unmarried, under the age of eighteen, and dependent on their disabled parent. 42 U.S.C. § 402(d)(1). Benefits paid to the children are their "financial resources." *Graby v. Graby*, 87 N.Y.2d 605, 611, 641 N.Y.S.2d 577, 664 N.E.2d 488, 491 (1996); *see also Keith v. Purvis*, 982 So.2d 1033, 1038 (Miss.Ct.App.2008)("social security benefits received by a child belong to the child"); *Windham v. State ex rel. Windham*, 574 So.2d 853, 855 (Ala.Civ.App.1990)(same); *Fuller v. Fuller*, 49 Ohio App.2d 223, 225, 360 N.E.2d 357, 358 (1976)(disability benefit "inures directly to the child").

In the case of children who are under eighteen years old and who, because of their youth, are unable to manage their benefits, the Social Security Administration may appoint a "representative payee" to receive and manage the benefits for them. 20 C.F.R. §§ 404.2001(b), 404.2010(b). The representative payee may be the disabled parent for whom the payment is made if he or she has custody of the children to whom the benefit is paid. 20 C.F.R. §§ 404.2020(d), 404.2021(c)(1). A representative payee must "[u]se the benefits received on [the children's] behalf only for [the children's] use and benefit in a manner and for the purposes he or she determines, under the guidelines in this subpart, to be in [the children's] best interests." 20 C.F.R. § 404.2035(a); *see also* 20 C.F.R. §§ 404.2040 (guidelines on use of benefit payments), 404.2065 (accounting requirements).

Here, mother received monthly Social Security checks that paid a benefit on behalf of the child because of mother's disability. Thus, she was a representative payee.

When examining the federal regulations creating the representative payee structure, some courts have indicated that representative payee parents do not "receive" their children's Social Security disability awards. *See In re Unisys Corp. Long–Term Disability Plan ERISA Litigation*, 97 F.3d 710, 716 (3d Cir.1996) ("The fact that in some cases [a

representative payee] may take custody of the Social Security award made to a dependent does not mean that the [representative payee] receives the award."); *Carstens v. United States Shoe Corp.'s Long–Term Benefits Disability Plan,* 520 F.Supp.2d 1165, 1169 (N.D.Cal.2007)(same, citing *Unisys); cf. Whaley v. Schweiker,* 663 F.2d 871, 874 (9th Cir.1981) (veteran's benefits) ("The ability to apportion the benefit earmarks a portion of the payment to the veteran as a child's benefit. It evidences an intent that the eligible child shall receive the benefits allotted to him.").

In light of this federal authority, we must confront the question of what our legislature intended when it employed the phrase "actually received." Did the General Assembly mean to modify the word "received" so that the phrase would include benefits a representative payee receives on behalf of a child?

#### b. The Statutory Language

Section 14–10–115 does not define the phrase "actually received." The dictionary defines "actually" to mean, "in act or in fact: REALLY." *Webster's Third New International Dictionary* 22 (2002). "Receive" has several meanings, including two pertinent here: "to take possession or delivery of"; and "to admit or accept in some character or capacity." *Id.* at 1894.

Focusing on the adverb "actually," the phrase "actually received" may be interpreted in at least two ways. On one hand, the use of the adverb may simply mean that the parent must physically receive the benefit. Thus, the phrase would cover disability benefits mother directly receives because of her disability and on behalf of the child as a representative payee. On the other hand, the adverb's purpose may be narrower, referring only to benefits mother receives on her own behalf.

We cannot tell from the language of subsection (5)(a)(I)(P) alone which of these interpretations the legislature intended. Thus, because the phrase "actually received" is susceptible of more than one interpretation, we conclude that it is ambiguous. We must, therefore, employ the standard tools of statutory construction to determine its meaning.

#### 4. Legislative History

##### a. 1992

The focus of our analysis is on the predecessor statutes to subsections (5)(a)(I)(P), (5)(a)(II)(D), and (11)(c).

In 1992, the legislature amended section 14–10–115 by adding subsection (16.5). Ch. 33, sec. 1, § 14–10–115(16.5), 1992 Colo. Sess. Laws 168. The added subsection stated:

> In cases where the custodial parent receives periodic disability benefits granted by the federal "Old-age Survivors, and Disability Insurance Act" on behalf of dependent children due to the disability of the noncustodial parent ... the noncustodial parent's share of the total child support obligation ... shall be reduced in an amount equal to the amount of such benefits.

This first version of subsection (16.5) does not control the issue here, because it concerns the custodial parent's receipt of benefits due to the disability of the noncustodial parent. Thus, it is similar to current subsection (11)(c).

However, this version of subsection (16.5) indicates that the legislature was aware that a custodial parent could receive disability payments "on behalf of" his or her children, becoming, by operation of law, a representative payee. In this circumstance, the noncustodial parent's support obligation would be reduced dollar-for-dollar by the amount of the disability award.

##### b. 1996

Subsection (16.5) was amended in 1996. A careful analysis of the developmental course of this amendment as it worked its way through the legislature is necessary to determine the legislative intent behind the amendments.

###### i. Child Support Commission

Our research indicates that the original impetus for the 1996 amendment to subsection (16.5) was a report issued by Colorado's Child Support Commission. The legislature

created the Commission, and its duties are to review the schedule of child support obligations and general child support issues, and to make recommendations for changes to the governor and the legislature. § 14–10–115(16)(a), C.R.S.2008.

Divisions of this court have previously analyzed the Commission's report when construing a statute where, as here, legislation was enacted in direct response to one of the Commission's recommendations. *See In re Marriage of Antuna,* 8 P.3d 589, 596 (Colo. App.2000); *In re Marriage of Staggs,* 940 P.2d 1109, 1111 (Colo.App.1997); *In re Marriage of Andersen,* 895 P.2d 1161, 1164 (Colo. App.1995); *In re Marriage of Van Inwegen,* 757 P.2d 1118, 1120 (Colo.App.1988).

In January 1996, the Commission recommended two changes that are relevant here. First, the Commission proposed that subsection (16.5) be amended to read that:

> Social security benefits received by the minor children as a result of the disability of the custodial parent, or the death or disability of a step-parent are not to be included as income for the minor children for the determination of child support. However, any social security benefits *actually received* by the custodial parent as a result of the disability of the custodial parent shall be included in the gross income of the custodial parent.

Second, the Commission recommended that section 14–10–115(7)(a)(I)(A)

> be clarified to state that social security benefits received as a result of the death or disability of a step-parent of the children shall not be included as income of the parent or the child(ren) for the determination of child support.

Colorado Child Support Commission Report 6 (1996) (emphasis added).

The Commission explained the purpose for these amendments:

> The Commission learned that at the present time, social security benefits received by minor children due to the death or disability of a step-parent [are] included in the child support calculations for the determination of the child support owed by natural parents. This is included as income

for the minor children pursuant to C.R.S. 14–10–115(16.5) or as gross income of the custodial parent pursuant to C.R.S. 14–10–115(7)(I)(A). Colorado law clearly states that the income of a step-parent, if he or she is alive and employed, cannot be included in either the custodial or non-custodial parent's income for the calculation of child support. However, if the step-parent dies, the children may be entitled to receive social security benefits from that step-parent's account. In turn, the amount of the social security benefits is considered income to the children under the current child support guidelines, thus[,] it reduces or negates the non-custodial parent's share of the child support obligation. Because social security benefits are a fraction of the deceased step-parent's income, however, the children have less income available than what was available to them when the step-parent was alive. Reducing the non-custodial parent's share of the child support obligation also reduces the economic resources available to the children. This also applies if the custodial parent is disabled and actually receives social security disability benefits for the minor child(ren).

*Id.* at 5.

### ii. Senate Bill 2 in the Senate

The amendment to subsection (16.5) began as part of Senate Bill 2. The version of the amendment that was approved by the Senate left the first sentence of subsection (16.5) in the same form as it appeared in 1992, and added a second sentence:

> Social security benefits received by the minor children as a result of the death or disability of a stepparent are not to be included as income for the minor children for the determination of child support. However, any social security benefits actually received by the custodial parent shall be included in the gross income of the custodial parent.

Importantly, this version differed from the Commission's recommendation because it removed the phrase "as a result of the disability of the custodial parent" from the first sentence.

The Senate also altered the definition of "gross income," voting that subsection (7)(a)(I)(A) should be amended to read:

> "Gross income" does not include . . . social security benefits received as a result of the death or disability of a stepparent of the children.

### iii. Senate Bill 2 in the House

Senate Bill 2 then moved to the House. The purpose of the amendment to subsection (16.5) approved by the Senate was addressed at a hearing before the House Judiciary Committee on March 12, 1996. A witness describing the addition told the committee that current law was silent on how to treat Social Security disability income received by a parent because of that parent's disability. The solution, as expressed in the addition, was to include it in the parent's gross income, and the witness added that the solution was based on the Child Support Commission's recommendation.

The House Judiciary Committee issued a report after it voted to pass Senate Bill 2 to the full House. The report described the amendment to subsection (16.5):

● Proposal: Clarifies that S[ocial] S[ecurity] benefits received by the children as a result of a stepparent's claim are not included in income when determining a child support amount, but that S[ocial] S[ecurity] benefits received by the custodial parent are to be included.

● Current Language: Does not address how to treat benefits received by the child.

● Reason for Change: To clarify how S[ocial] S[ecurity] benefits are to be treated when calculating a child support amount.

On March 22, 1996, the full House altered the original version of the amendment to subsection (16.5) by amending it on the floor. The word "that" was substituted for the adjective "custodial," which had modified the noun "parent" in two places in the second sentence. The phrase "or as a result of the death of the minor child's stepparent" was inserted in the second sentence. Thus, as a result of the amendments in the Senate and the House, the last two sentences of subsection (16.5) that were enacted into law in 1996 stated:

> Social security benefits received by the minor children, or on behalf of the minor children, as a result of the death or disability of a stepparent are not to be included as income for the minor children for the determination of child support. However, any social security benefits actually received by a parent as a result of the disability of that parent, or as a result of the death of the minor child's stepparent, shall be included in the gross income of that parent.

Ch. 130, sec. 7, § 14–10–115(16.5), 1996 Colo. Sess. Laws 598.

The House amendment also modified the definition of "gross income" contained in subsection (7)(a)(I)(A) to read that the term includes:

> social security benefits, including social security benefits actually received by a parent as a result of the disability of that parent or as the result of the death of the minor child's stepparent, but not including social security benefits received by a minor child or on behalf of a minor child as a result of the death or disability of a stepparent of the child.

Ch. 130, sec. 7, § 14–10–115(7)(a)(I)(A), 1996 Colo. Sess. Laws 595.

Representative MacPherson explained the House amendments immediately before they were approved. He said:

> It says that if a parent has use of that income, for instance if their spouse passes away and they have that Social Security income or if they are disabled and they have Social Security income, then that is to be used for the calculation of child support. However, if they are receiving income that is intended for the children but because the children are minors they're taking in custody as custodians for the children, then that money is not used to calculate child support obligation.

### 5. Conclusion

#### a. Statutory Analysis

According to the foregoing legislative history, the purposes of the House amendments

that became law as subsections (7)(a)(I)(A) and (16.5) were:

- To address an issue that was not then covered by the statute, which was how to treat Social Security benefits received by a child;
- To exclude from the definition of gross income, and thus remove from the determination of the child support obligation, benefit payments received by a child, or on behalf of a child, resulting from the death or disability of a stepparent; and
- To include within the definition of gross income, and thus include in the determination of the child support obligation, benefit payments received by a parent (1) on account of the parent's disability, or (2) as a result of the death of a stepparent.

■ Thus, we conclude that the phrase "actually received" in subsections (7)(a)(I)(A) and (16.5) only refers to the disabled parent's own disability benefits, and does not include disability benefits the disabled parent receives on behalf of a child. As a result, we must reject mother's argument that such benefit payments must be included in mother's gross income for the purposes of calculating her child support obligation.

We base our conclusion on two factors. First, we compare the language of the Commission's proposed amendments with the 1996 Senate version and the House amendments. The Commission's proposal differs in crucial respects from the language employed by the Senate and the House.

The Commission's proposed amendment to subsection (16.5) specifically excluded benefits received by a child "as a result of the disability of the custodial parent" from a child's income. Neither the Senate version, nor the House amendments, contained such language. Rather, subsection (16.5) was only amended to exclude income a child received as a result of a stepparent's death or disability from the calculation of the child support obligation. Thus, the legislature's failure to include the Commission's language referring to benefits received because of a custodial parent's disability in subsection (16.5) must be seen as a rejection of such language. *See People v. Seacrist,* 874 P.2d 438, 440 (Colo.

App.1993) (court applies "the presumption that the General Assembly was aware that qualifying language could be added to limit application of the statute ... and that it would have done so if such had been its intent"); *cf. People v. Hynes,* 917 P.2d 328, 330 (Colo.App.1996)("[T]he failure of the General Assembly to change or add language ... that would have extended the scope of [a privilege] to include the information and documents [that a supreme court case had previously concluded were excluded from the privilege's coverage] is compelling evidence that the General Assembly did not intend [the information and documents] to come under the privilege....").

Second, Representative McPherson's statement supports this conclusion. When read in context, it is clear he was concerned with benefits a child receives because of a stepparent's death or disability when he said that, when a custodial parent receives income intended for the children because they are minors, the "money is not used to calculate child support obligation." Representative McPherson's comments were narrowly tailored to these circumstances, and did not constitute a broad statement that the purpose of the House amendments was to require that all disability payments received by a custodial parent on behalf of a child be excluded from calculations of the child support obligation.

We recognize that this interpretation leads to different treatment, for the purposes of calculating child support, of disability benefits received by a representative payee who is the custodial parent of a child and disability benefits a child receives because of the death or disability of a stepparent. However, absent constitutional infringements, which are not alleged to exist here, it is the legislature's prerogative, not ours, to make such distinctions, or, in the future, to eliminate them. *See HealthONE v. Rodriguez,* 50 P.3d 879, 893 (Colo.2002) (the legislature is entitled to make reasonable distinctions among classes, and the courts must treat such distinctions with deference).

We conclude that the magistrate was correct when he decided that the child's disabili-

ty payments should not be included in mother's gross income. Therefore, subsections (5)(a)(I)(P), (5)(a)(II)(D), and (11)(c) do not apply here.

**b. Calculation of Child Support Obligation**

■ The child support guidelines establish a child support figure that is presumptively necessary to meet a child's needs. *In re Marriage of Cropper*, 895 P.2d 1158, 1160 (Colo.App.1995). However, other factors can be considered which may defray the basic support obligation.

For example, under section 14–10–115(2)(b)(I), C.R.S.2008, one factor that a court "shall consider" when "determining the amount of support" is "[t]he financial resources of the child." Here, the disability benefit mother receives on behalf of the child is the child's "financial resource" because, as indicated above, (1) such disability benefits belong to the child; and (2) the legislature chose not to enact statutory language that would require such disability benefits to be treated as part of the custodial parent's financial resources instead of the child's.

Further, section 14–10–115(11)(b), C.R.S. 2008, states that, "[a]ny additional factors that actually diminish the basic needs of the child may be considered for deductions from the basic child support obligation."

■ Thus, if a court finds that a child's income diminishes the child's basic needs, the court may reduce the basic support obligation by an amount that represents "the reduction in need." *In re Marriage of Kluver*, 771 P.2d 34, 36 (Colo.App.1989). A trial court's determination of the extent of a reduction in a support obligation due to an unemancipated child's income is within its discretion, and depends upon the totality of the circumstances. *Cropper*, 895 P.2d at 1160. "[T]he trial court is not bound to deduct automatically the entire amount of a child's income from the basic child support obligation, but must determine to what extent such income reasonably should be applied to reduce parental support." *Id.*

■ To resolve the issue here, we turn to *In re Marriage of Quintana*, 30 P.3d 870, 871 (Colo.App.2001), a decision we find to be persuasive. In *Quintana*, the custodial parent received Social Security disability benefits on behalf of her children. The trial court classified these benefits as the children's income, and, under section 14–10–115(2)(b)(I) and (11)(b), gave the noncustodial parent credit for those benefits against his child support obligation. In doing so, the trial court decided that the effect of the payments was to provide the noncustodial parent with a benefit by reducing his percentage of the combined income, as opposed to providing a "dollar for dollar offset." *Quintana*, 30 P.3d at 871. The division affirmed, concluding that the trial court did not abuse its discretion when it considered the children's disability benefits as an adjustment to the child support figure because the benefits "were actually diminishing the children's basic needs." *Id.; see also* 19 Frank L. McGuane, Jr., Kathleen A. Hogan & Brenda L. Storey, Colo. Prac., Family Law & Practice § 26.16 (1999) ("There will be instances in which a child receives social security disability payments as a result of the disability of the custodial parent who is the recipient of child support. It is appropriate to consider those payments as income to the child for purposes of calculating child support [under § 14–10–115(2)(b)(I) and 11(b) ].") (citing *Quintana*).

Because we have previously determined that the child's disability income should not be included in mother's gross income, we conclude that, as in *Quintana*, the proper statutes to apply to this case are subsections (2)(b)(I) and (11)(b). Here, the magistrate expressly found that the child's disability payment diminished the child's actual needs.

We recognize, under *Cropper*, the magistrate was not required to reduce father's child support obligation by the entire amount of the disability payment. However, we cannot say, on the record before us and being guided by *Quintana* and *Cropper*, that the magistrate abused his discretion by deciding that (1) the disability payments reduced the child's need for support; (2) father's child support obligation should be reduced by the entire amount of the child's disability payment; and (3) father had overpaid his child support obligation by $8778.20 because of the

child's income. We therefore affirm those decisions.

### B. Child Support Arrearages

#### 1. Recalculation of Arrearages Based on Receipt of Benefit

Based on the foregoing reasoning, the magistrate's decision to reduce the arrearages from $15,323 to $6545.80 was likewise within his discretion. Therefore, we affirm it.

#### 2. Reduction of Arrearages Based on Nondisclosure of Benefit

Section 14–10–122(1)(c), C.R.S.2008, states that a court-ordered child support payment becomes a final money judgment "when it is due and not paid." The statute sets forth a rule that these judgments "shall not be retroactively modified." *Id.; In re Marriage of Greenblatt*, 789 P.2d 489, 491–92 (Colo.App. 1990).

Divisions of this court have identified an exception to this rule. The doctrine of equitable estoppel can be used to provide relief from accrued arrearages. *In re Marriage of Dennin*, 811 P.2d 449, 450–51 (Colo. App.1991). For the doctrine to apply,

> [t]he party asserting an estoppel claim must demonstrate that he reasonably relied to his detriment upon the acts or representations of the other person and that he had no knowledge or convenient means of knowing the facts.

*Id.* at 450.

Here, the magistrate determined that mother's failure to advise father of her receipt of the benefit payments justified a reduction in the arrearages. Such a determination could, under *Dennin*, provide a basis for a reduction if all appropriate factors have been included in the analysis.

However, a child support order serves the statutory purposes contained in section 14–10–115(1)(a), C.R.S.2008, and the best interests of the child. *People v. Martinez*, 70 P.3d 474, 478 (Colo.2003). Before entering an order reducing arrearages because of a parent's misconduct, a court must determine whether such reduction will dam-age the child's interests. *See In re Marriage of Haddad*, 93 P.3d 617, 620–21 (Colo.App. 2004) (court may only offset overpayment against current child support obligation if, in doing so, "the interests of the children will not be harmed"). Further, the court's calculation of the reduction of the arrearages must be based on the amount of child support that would have been paid but for the misconduct of the parent. *Dennin*, 811 P.2d at 451 (relieving father's obligation to pay child support retroactively for a period of several years because of mother's misrepresentations about father's parental status during that period).

Here, the magistrate decided that he would credit the amount of attorney fees husband was required to pay against the arrearages "in the interest of equity," because of mother's deception in failing to disclose to father that she was receiving the benefit payments. The magistrate also reasoned that father incurred attorney fees in preparing for the hearing on remand. The magistrate then concluded that he would award father $1645.80 in attorney fees "[a]s a consequence of [mother's] deceit," and offset that amount against the remaining arrearages.

Although we agree with the magistrate that a parent's dishonesty in post-dissolution proceedings may be taken into account when deciding to which parent attorney fees should be awarded and the amount of those fees, the magistrate's decision here was not supported by law. First, the magistrate did not analyze whether reducing the arrearages by the amount of the attorney fees it awarded father was in the child's best interests. *See Haddad*, 93 P.3d at 620–21.

Second, although a court has broad discretion to award attorney fees under section 14–10–119, C.R.S.2008, the primary purpose for awarding attorney fees in a marriage dissolution case is to equalize the parties' financial positions. *In re Marriage of Bregar*, 952 P.2d 783, 788 (Colo.App.1997).

A trial court may consider a party's actions in initiating unwarranted proceedings when determining whether to award attorney fees. However, the award should be

primarily based upon the purpose of apportioning the costs and fees of an action equitably between the parties and not as a means of punishing a party.

*In re Marriage of Trout,* 897 P.2d 838, 840 (Colo.App.1994) (citation omitted).

The magistrate's order here states that the purpose for crediting the $5000 in attorney fees previously awarded to mother against father's child support arrearages was the magistrate's "consideration of [mother's] [d]eception." The purpose for awarding father an additional $1685 in attorney fees was "[a]s a consequence of [mother's] deceit." As articulated, these stated purposes punished mother and the child without considering how the attorney fees awarded to father "apportion[ed] the costs and fees of [the] action equitably between the parties." *Id.*

We reverse the magistrate's decision to reduce the arrearages by (1) applying the $5000 previously awarded mother as attorney fees as a credit against the arrearages, thus reducing the arrearages from $6545.80 to $1645.80; and (2) awarding father attorney fees of $1645.80, and applying this figure as a credit against the remaining arrearages, thus reducing them to zero. In reaching these decisions, the magistrate only considered mother's failure to disclose that she was receiving benefit payments. This was error, because the magistrate did not apply the proper analysis under *Trout* when awarding father attorney fees, and did not consider the best interests of the child and the statutory policies contained in section 14–10–115(1)(a) when reducing the child support arrearages. Such analysis must be performed on remand. In reaching this conclusion, we do not intend to eliminate mother's misconduct from the analysis. Rather, we simply make clear that it cannot be the only factor in the analysis.

The portion of the district court's order adopting the magistrate's order crediting father with $5,000 in attorney fees previously awarded to mother and awarding father $1,645.80 in attorney fees is reversed. This case is remanded to the district court to conduct further proceedings on these issues, or to return this case to the magistrate to conduct those proceedings, consistent with

this opinion. The district court's order is affirmed in all other respects.

Judge DAILEY and Judge J. JONES concur.